United States Court of Appeals,

Eleventh Circuit.

No. 96-2714.

UNITED STATES of America, Plaintiff-Appellee,

v.

Tony L. HOLLOMAN, Defendant-Appellant.

May 22, 1997.

Appeal from the United States District Court for the Middle District of Florida. (No. 95-196-CR-T-17A), Elizabeth A. Kovachevich, Chief Judge.

Before DUBINA and BLACK, Circuit Judges, and COHILL[*], Senior District Judge.

PER CURIAM:

The present appeal challenges the constitutionality of a search conducted by St. Petersburg Police Department detectives as part of a narcotics interdiction operation. Detectives staffing the interdiction operation detained motorists observed to be in violation of Florida's motor vehicle code as a prelude to either a consensual search or a canine sniff of their vehicles. Appellant Tony L. Holloman argues that evidence derived from a canine sniff of his vehicle must be suppressed because the interdiction operation constitutes an unconstitutional roving patrol. In addition, Appellant Holloman maintains that police officers violated the Fourth Amendment when they detained him longer than necessary to process his traffic violation. We affirm the district court's denial of Appellant Holloman's motion to suppress.

---

[*]Honorable Maurice B. Cohill, Jr., Senior U.S. District Judge for the Western District of Pennsylvania, sitting by designation.

## I. *BACKGROUND*

Intent upon stemming the flow of narcotics into Pinellas County from the south, the St. Petersburg Police Department established an interdiction operation on Interstate 275, immediately north of the Skyway Bridge. The interdiction unit stopped each northbound motorist observed to be in violation of Florida's motor vehicle code, with the exception of minor speeders. After a marked cruiser stopped a vehicle for an observed traffic infraction, one or more detectives would approach the vehicle, ask the driver to exit, and instruct the driver to accompany them to the area of the police cruiser. Having identified themselves as members of the drug interdiction unit and explained the reason for the traffic stop, the detectives would request the motorist's consent to search the vehicle for narcotics. If the motorist granted permission, one detective would search the vehicle while another completed a computer check of the vehicle and driver. If the motorist denied permission, a narcotics detection dog would be summoned to sniff the exterior of the vehicle. In either case, once the results of a computer check of the vehicle and driver had been received, the officers would conclude the encounter by issuing a citation or an oral warning.

On the night of June 29, 1995, St. Petersburg Detective Jeffrey Riley was working with the interdiction unit when he observed Appellant Tony L. Holloman proceeding northbound in a black pickup truck. As the truck lacked an illuminated license

tag,[1] Detective Riley radioed detectives manning a chase vehicle to pursue and stop Appellant Holloman.  After stopping the vehicle, the detectives adhered to the interdiction unit's standard procedures.  The detectives requested Appellant Holloman's permission to search the pickup truck for evidence of narcotics, but Holloman denied his consent after ascertaining that the detectives did not have a search warrant.

By this time, Detective Riley had arrived on the scene with Ben-K, his narcotics detection dog.  When advised that Appellant Holloman had refused consent to search the vehicle, Detective Riley and Ben-K approached the pickup truck.  Ben-K alerted to the presence of narcotics by scratching at the passenger-side door and exhibiting other alert behavior.  Detective Riley then opened the passenger-side door, whereupon Ben-K responded aggressively to a sneaker box on the floor of the vehicle.  In the sneaker box, Detective Riley discovered 694 grams of crack cocaine.  Appellant Holloman was immediately placed under arrest.  After receiving *Miranda* warnings, Holloman made admissions to the detectives regarding the narcotics.

On July 25, 1995, a federal grand jury indicted Appellant Holloman for knowingly and intentionally possessing cocaine base with intent to distribute, a violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2.  Holloman pled not guilty and sought suppression of any evidence derived from the nonconsensual search of his vehicle.

---

[1]Section 316.221(2) of the Florida Uniform Control Law requires a tail lamp or separate lamp to illuminate the rear registration plate and render it clearly legible from a distance of fifty feet to the rear.

The district judge referred the motion to a magistrate judge for a report and recommendation. On October 19, 1995, the magistrate judge recommended that the district court grant the motion to suppress because he concluded that the traffic stop was "unreasonably pretextual and unconstitutional." By order issued December 12, 1995, the district court rejected the magistrate judge's recommendation and denied the motion to suppress.

On December 28, 1995, Appellant Holloman filed a consented notice of intent to enter a conditional guilty plea, thereby preserving his right to appeal the denial of his motion to suppress. After the district court adjudicated him guilty, Holloman filed a timely notice of appeal.

## II. *DISCUSSION*

Appellant Holloman argues that the district court erred when it denied his motion to suppress because the St. Petersburg Police Department stopped his vehicle as part of a pretextual "roving patrol." In addition, Holloman argued before the district court that any seizures made by the interdiction operation necessarily violated the Fourth Amendment because the St. Petersburg Police Department had used the enforcement of state traffic regulations as a subterfuge to further their drug interdiction efforts. On appeal, Holloman appears to recognize that the latter avenue of attack has been effectively foreclosed by a recent decision of the Supreme Court, but ultimately proves unwilling to concede the point.

After Holloman filed his notice of appeal, the Supreme Court issued its decision in *Whren v. United States,* --- U.S. ----, 116

S.Ct. 1769, 135 L.Ed.2d 89 (1996). The *Whren* Court squarely rejected the pretextual stop analysis that had prevailed previously in the Eleventh Circuit. Instead, the Court held that the constitutional "reasonableness" of a traffic stop must be determined irrespective of "intent," whether of the particular officers involved or of the theoretical "reasonable officer." *Id.* at ----, --- U.S. at ---- - ----, 116 S.Ct. at 1773-76. The decision conclusively refutes the notion that ulterior motives may invalidate police conduct that is justified on the basis of probable cause to believe that a violation of law has occurred. *Id.* at ----, --- U.S. at ----, 116 S.Ct. at 1773. As it is undisputed that the police officers in the present case possessed probable cause to believe that a traffic violation had occurred, their seizure of Appellant Holloman and his vehicle comports with the Fourth Amendment notwithstanding their subjective desire to intercept any narcotics being transported into Pinellas County.

In an effort to distinguish *Whren,* Holloman asserts that whereas "[t]he drugs in *Whren* were in plain view once the lawful traffic stop had been made," "[t]he discovery of the drugs in Holloman's case required a detention and search." Appellant's Brief at 13. The proffered distinction proves illusory, however. Appellant Holloman correctly notes that, having lawfully detained a suspect based upon an observed traffic violation, the police officers in *Whren* developed probable cause to believe that a narcotics violation had taken place without conducting a search when drugs were observed in plain view. In an analogous manner, the detectives in the present case acquired probable cause to

believe that a narcotics violation had taken place without conducting a constitutionally cognizable search. Contrary to the assumption inherent in Holloman's argument, the canine sniff that provided the probable cause to search Appellant Holloman's pickup truck in the present case does not qualify as a search for Fourth Amendment purposes. *See United States v. Place,* 462 U.S. 696, 707, 103 S.Ct. 2637, 2644-45, 77 L.Ed.2d 110 (1983) (holding that, because canine sniff of a person's luggage indicated only the presence or absence of contraband, the canine sniff was not a "search" within the meaning of the Fourth Amendment). The present case therefore is analytically indistinguishable from *Whren.*

Even if not unconstitutionally pretextual, Appellant Holloman maintains that the drug interdiction operation established by the St. Petersburg Police Department constitutes an unlawful "roving patrol." Proceeding without the benefit of *Whren,* the district court analyzed the present case within the preexisting legal framework. The district court reasoned that the interdiction operation possessed attributes of both a roving patrol and a roadblock, but was not identical to either. *United States v. Holloman,* 908 F.Supp. 917, 918 (M.D.Fla.1995). Rather than force the facts of the case into one mold or the other, the district court employed a hybrid analysis. *Id.* at 918-19. The district court recognized that, had the present detention stemmed from a roadblock, the pretextual nature of the interdiction operation would not have offended the Fourth Amendment. *Id.* at 920 (citing *Merrett v. Moore,* 58 F.3d 1547, 1551 (11th Cir.1995) (holding that "where the state has one lawful purpose sufficient to justify a

roadblock, that the state also uses the roadblock to intercept illegal drugs does not render the roadblock unconstitutional"), *cert. denied,* --- U.S. ----, 117 S.Ct. 58, 136 L.Ed.2d 21 (1996)). The court then determined that neither the intrusiveness of the stops nor the level of officer discretion associated with the stops conducted by the interdiction operation warranted treating the present case differently from the pretextual roadblock upheld in *Merrett. Holloman,* 908 F.Supp. at 921-22.

On appeal, Holloman insists that the present case bears a closer resemblance to an unlawful roving patrol than to a constitutionally permissible roadblock stop. Contrary to Appellant Holloman's position, the present case involves neither a roadblock nor a roving patrol stop. Holloman's effort to force this case within the roadblock/roving stop framework reflects a misunderstanding of Supreme Court precedent. The roadblock and roving stop cases concern whether, consistent with the Fourth Amendment, the Government may temporarily detain motorists in the absence of probable cause or reasonable articulable suspicion. *See Whren,* --- U.S. at ----, 116 S.Ct. at 1773. The Supreme Court has decided that properly implemented roadblocks may withstand constitutional scrutiny, *see, e.g., Michigan Dep't of State Police v. Sitz,* 496 U.S. 444, 455, 110 S.Ct. 2481, 2488, 110 L.Ed.2d 412 (1990) (upholding constitutionality of a highway sobriety checkpoint against a Fourth Amendment challenge), but that roving patrol stops generally will not unless supported by at least reasonable, articulable suspicion, *see, e.g., Delaware v. Prouse,* 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660 (1979)

(concluding that the Fourth Amendment prevented police officers from conducting roving patrol stops of vehicles to check license and registration information unless they possessed reasonable, articulable suspicion).

The present case, however, does not involve the seizure of an automobile in the absence of probable cause. The St. Petersburg Police Department narcotics interdiction team detained Appellant Holloman only after acquiring probable cause to believe that he had violated Florida's traffic regulations. The Supreme Court has never intimated that the Fourth Amendment prohibits automobile stops when officers have probable cause to believe that a violation of traffic regulations has occurred. To the contrary, the Supreme Court has held that automobile seizures based upon probable cause almost invariably will survive the "reasonableness" determination inherent in the Fourth Amendment. *Whren,* --- U.S. at ----, 116 S.Ct. at 1772 ("As a general matter, the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."); *id.* at ----, --- U.S. at ----, 116 S.Ct. at 1776 (noting that with rare exceptions, the balancing required by the Fourth Amendment is not in doubt where the search or seizure is based upon probable cause). The probable cause requirement mitigates the concern evident in roving patrol cases regarding unbridled police discretion. *Prouse,* 440 U.S. at 654, 659, 99 S.Ct. at 1396, 1399 (recognizing that observed violations provide the "quantum of individualized suspicion" necessary to ensure that police discretion is sufficiently constrained). Moreover, although even a patrol stop based upon

probable cause may generate "concern" or "fright," the existence of probable cause to believe the law has been broken outweighs the private interest in avoiding police contact. *Whren,* --- U.S. at ----, 116 S.Ct. at 1776-77. Consequently, the temporary seizure of Appellant Holloman's vehicle was not an unconstitutional roving stop. The roving stops condemned by the Supreme Court violated the Fourth Amendment because they were not based upon a sufficient degree of individualized suspicion. By contrast, the officers effecting the seizure of Appellant Holloman's vehicle had probable cause to believe he had violated Florida traffic regulations.

Finally, Appellant Holloman contends that the detectives in the instant case violated the Fourth Amendment by continuing to detain him beyond the investigation for the observed traffic violation. The undisputed facts of the present case refute the suggestion that the detectives detained Holloman any longer than necessary to process the traffic violation. The district court noted that, although some drivers may have been delayed briefly while awaiting the arrival of a drug-sniffing dog, Appellant Holloman was not delayed at all because the canine unit was already on the scene by the time he denied consent to search his vehicle. A different case might be presented if Holloman were one of the individuals forced to wait for the arrival of a canine unit, *see United States v. Mesa,* 62 F.3d 159, 162 (6th Cir.1995) ("Once the purposes of the initial traffic stop were completed, there is no doubt that the officer could not further detain the vehicle or its occupants unless something that occurred during the traffic stop generated the necessary reasonable suspicion to justify a further

detention."), but that case is not before us.

### III. *CONCLUSION*

In accordance with the foregoing, we affirm the district court order denying Appellant Holloman's motion to suppress.

AFFIRMED.