DECISION AND JUDGMENT ENTRY
This is an appeal from a judgment of conviction and sentence entered by the Chillicothe Municipal Court. After a trial to the court, the court found Adam Kennedy, defendant below and appellant herein, guilty of possessing a controlled substance (i.e. less than 100 grams of marijuana) in violation of R.C.2925.11 (A), a minor misdemeanor. The following "errors" are assigned for our review:[1]
FIRST ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED, TO THE PREJUDICE OF THE APPELLANT, BY FINDING THAT THE ARRESTING OFFICER HAD PROBABLE CAUSE TO STOP APPELLANT."
SECOND ASSIGNMENT OF ERROR:
 "THE TRIAL COURT ERRED, TO THE PREJUDICE OF THE APPELLANT, BY NOT SUPPRESSING THE RESULTS OF THE `PAT DOWN SEARCH'."
The record reveals the following facts pertinent to this appeal. On July 4, 1998, Officers Washburn and Goble of the Chillicothe Police Department were working plain clothes "drug interdiction" around the area of Main Street in Chillicothe, Ohio. Shortly after midnight, they observed a white Chevy Astro van driving southbound on Sugar Street. The van travelled left of center and very close to the left-hand curb. This prompted Officer Washburn to call in "for a marked cruiser" to stop the vehicle. A nearby police officer responded and stopped the van.
Officer Washburn approached the van and asked to see the driver's (appellant) license, registration and proof of insurance. During a "LEADS check" for outstanding warrants, Officer Washburn requested that a canine unit be brought to the scene to "sniff . . the air around the vehicle" for drugs. Within minutes Officer Hartley arrived with a dog that walked around the van and scratched the driver's side of the vehicle with its paw. The officer asked appellant to exit the vehicle and Officer Washburn performed a "pat down" search for weapons. During this procedure, Officer Washburn discovered a "baggie" sticking out from the front of appellant's pants but partially concealed by his shirt. The baggie contained "[g]reen leafy vegetation" later found to be marijuana.
Appellant was thereafter given a misdemeanor citation for possession in violation of R.C. 2925.11. He pled "not guilty" to the offense and, on July 23, 1998, filed two (2) separate motions to suppress evidence. In the first motion, appellant asserted that the police did not have "probable cause to stop and/or arrest [him]." The second motion asserted that Officer Washburn found and seized the contraband during an illegal search. Appellant concluded, under both motions, that the marijuana found on his person should be suppressed.
A hearing on these motions, as well as a bench trial, was conducted on November 6, 1998. Officer Washburn testified at that time and recounted that the only reason he and Officer Goble had appellant stopped by another policeman was because appellant was driving left of center. The Officer also related that, when he gave appellant the pat down for weapons, he immediately recognized the object concealed under appellant's shirt as a "cellophane baggie." Officer Washburn explained that, in his experience, a plastic baggie concealed in that manner usually contains contraband such as drugs. The State also called Officer James Hartley, the canine handler for the City of Chillicothe, who explained his qualifications and described how the dog "hit several different places on the vehicle" driven by appellant, "most notably on the passenger door and the driver's door." Officer Hartley expounded that this was the dog's method of "indicating" that there was a "smell of drugs" emanating from within the vehicle. The State rested and appellant presented no evidence in his defense. Both sides thereafter submitted post-hearing memoranda addressing the various constitutional issues raised during the hearing.
The trial court, on December 3, 1998, overruled both suppression motions. The trial court determined that the initial stop of appellant's vehicle was "supported by sufficient probable cause and/or reasonable articulable suspicion of criminal activity" in that Officer Washburn had observed appellant driving in violation of a Chillicothe Municipal Ordinance requiring vehicles to be driven on the right side of the roadway. The court further found that the marijuana discovered on appellant was admissible into evidence because it was discovered during a lawful "pat down" and was determined to be contraband under the so-called "plain feel" exception to the Fourth Amendment to the United States Constitution. Appellant was thus found guilty and given a $100 fine together with a six (6) month suspension of his operator's license. This appeal followed.
We will jointly consider the two (2) assignments of error as they both go to the trial court's ruling(s) on the motion(s) to suppress evidence. It should be noted at the outset that appellate review of such rulings present mixed questions of law and fact. See State v. McNamara (1997), 124 Ohio App.3d 706, 710,707 N.E.2d 539, 541; State v. Brite (1997), 120 Ohio App.3d 517,519; 698 N.E.2d 478, 479; also see United States v. Martinez
(C.A. 11 1992), 949 F.2d 1117, 1119; United States v. Wilson
(C.A.11 1990), 894 F.2d 1245, 1254. A trial court assumes the role of trier of fact during proceedings on motions to suppress.State v. Payne (1995), 104 Ohio App.3d 364, 367, 662 N.E.2d 60,61-62; State v. Robinson (1994), 98 Ohio App.3d 560, 570,649 N.E.2d 18, 25; State v. Rossiter (1993), 88 Ohio App.3d 162, 166,623 N.E.2d 645, 648. Thus, the evaluation of evidence and credibility of witnesses during those proceedings are issues to be determined by the trial court. State v. Smith (1997), 80 Ohio St.3d 89,105, 684 N.E.2d 668, 685; State v. Brooks (1996),75 Ohio St.3d 148, 154, 661 N.E.2d 1030, 1036-1037; State v. Fanning
(1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583, 584-585. Factual findings by the court are to be accepted by us unless they are "clearly erroneous." State v. Long (1998), 127 Ohio App.3d 328,332, 713 N.E.2d 1, 3; State v. Babcock (Feb. 13, 1997), Washington App. No. 95CA40, unreported; also see United States v.Lewis (C.A.1 1994), 40 F.3d 1325, 1332. That is to say that a reviewing court is bound to accept the factual determinations of a trial court during a suppression hearing so long as they are supported by competent and credible evidence. State v. Harris
(1994), 98 Ohio App.3d 543, 546, 649 N.E.2d 7, 9; State v.Claytor (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908;also see State v. DePalma (Jan. 18, 1991), Ross App. No. 1633, unreported. The application of the law to those facts, however, is then subject to de novo review. Harris, supra at 546,649 N.E.2d at 9; State v. Anderson (1995), 100 Ohio App.3d 688, 691,654 N.E.2d 1034, 1036; also see Lewis, supra 1332; Wilson, supra
at 1254. With these principles in mind, we turn our attention to the merits of this case.
Appellant argues that the trial court should have suppressed the marijuana found by Officer Washburn because: (1) the police did not have sufficient "probable cause" to stop his vehicle; and (2) the contraband was discovered during a "pat down" that exceeded the limited parameters allowed under the United States and Ohio Constitutions. We disagree with both arguments.
Our analysis begins with the Fourth Amendment to the United States Constitution which guarantees the rights of people to be secure against unreasonable searches and seizures. This protection is made applicable to the states through theFourteenth Amendment Due Process Clause, see generally Mapp v.Ohio (1961), 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, and, in any event, similar safeguards are provided under Section 14, Article I of the Ohio Constitution. See State ex rel. Wright v.Ohio Adult Parole Auth. (1996), 75 Ohio St.3d 82, 88,661 N.E.2d 728, 733; State v. Andrews (1991), 57 Ohio St.3d 86, 87,565 N.E.2d 1271, 1273. These constitutional guarantees ensure that searches and seizures, conducted outside the judicial process without prior approval by judge or magistrate, are per se unreasonable subject only to a few specifically established and well delineated exceptions. See Thompson v. Louisiana (1984),469 U.S. 17, 19-20, 93 L.Ed.2d 246, 250, 105 S.Ct. 409, 410; Katz v.United States (1967), 389 U.S. 347, 357, 19 L.Ed.2d 576, 585,88 S.Ct. 507, 514; also see State v. Veit (May 26, 1998), Athens 97CA34, unreported.
One such exception is for so-called "Terry" stops. This exception allows for brief investigative stops provided police can point to specific and articulable facts which, taken together with rational inferences therefrom, give rise to a reasonable suspicion of criminal activity. Terry v. Ohio (1967), 392 U.S. 1,21, 20 L.Ed.2d 889, 906, 88 S.Ct. 1868, 1880; also see Andrews,
supra at 87, 565 N.E.2d 1271, 1273, at fn. 1; State v. Loza
(1994), 71 Ohio St.3d 61, 71, 641 N.E.2d 1082.[2] of course, when police officers observe criminal activity taking place, such as traffic violations being committed, they are automatically justified in effecting a Terry stop and pulling over the motor vehicle involved. See e.g. State v. Lawless (Jun. 25, 1999), Portage App. No. 98-P-0048, unreported; State v. Carleton (Dec. 18, 1998), Geauga App. No. 97-G-2112, unreported; State v. Sheets
(Mar. 16, 1994) Gallia App. No. 93CA07, unreported; State v.Chelikowsky (Aug. 8, 1992), Pickaway App. No. 91CA27, unreported. This is precisely what happened in this case.
The provisions of Chillicothe Ordinance No. 331.01 (a) generally require that vehicles be driven upon the "right half of the roadway." Officer Washburn testified that he observed appellant driving on the "left side of the roadway, very close to the curb" in violation of that ordinance. The officer explained that this violation prompted him to call another uniformed officer to stop appellant. No evidence was introduced to contradict Officer Washburn or to show that appellant did not violate the city traffic ordinance. We therefore agree with the trial court that the initial stop of appellant's vehicle constituted a constitutionally permissible Terry stop.
Appellant counterargues that his violation of the traffic ordinance was merely a subterfuge used by police to stop and search him and his vehicle. He points us to testimony by Officer Washburn which he claims makes it "clear" that the police wanted to stop him solely so that they "could search for drugs." Appellant then cites us to several decisions by this Court wherein we have held that police stops of "weaving cars" were improper.[3] He urges us to consider the totality of the circumstances and rule that the stop at issue in the cause subjudice was likewise invalid. We are not persuaded.
First, from our review of the transcript, there is nothing in Officer Washburn's testimony to suggest that the violation of the traffic ordinance was used as a mere pretext to stop appellant and search his van. Second, even assuming arguendo that the ordinance violation was used as a pretext, both the United States and Ohio Supreme Courts have rejected the notion that so-called pretextual stops are unconstitutional. See Whren v. United States
(1996), 517 U.S. 806, 135 L.Ed.2d 89, 116 S.Ct. 1769; Dayton v.Erickson (1996), 76 Ohio St.3d, 665 N.E.2d 1091. Third, the "weaving car" cases upon which appellant relies are distinguishable from this case and present different problems which are not present here.[4] We therefore find nothing improper with the initial stop of appellant's vehicle by police.
We also find nothing constitutionally suspect in appellant's contact with police subsequent to the stop. The very purpose of aTerry stop is to maintain the status quo while police investigate the circumstances surrounding the stop and attempt to obtain additional information. See Adams v. Williams (1972),407 U.S. 140, 146, 32 L.Ed.2d 612, 617, 92 S.Ct. 1921; State v. Bobo
(1988), 37 Ohio St.3d 177, 180, 524 N.E.2d 489, 492. In conducting investigative stops, police officers may detain motorists for a sufficient period of time to run computer checks on their licenses. See Delaware v. Prouse (1979), 440 U.S. 648,659, 59 L.Ed.2d 660, 671, 99 S.Ct. 1391, 1399; also see State v.Green (May 14, 1999), Wood App. No. WD-98-068, unreported; Statev. Shook (Jun. 15, 1994), Lorain App. No. 93CA5716, unreported. Officer Washburn was conducting just such an investigation (i.e. having a "[w]ants and [w]arrants" or "LEADS" check run on the vehicle) when he requested a canine unit be brought to the scene.[5] Further, it should be noted that the use of drug sniffing dogs in this context did not amount to a "search" and Officer Washburn was not required to show either probable cause or reasonable suspicion that drugs were present. See State v.Carlson (1995), 102 Ohio App.3d 585, 594, 657 N.E.2d 591, 597;also see United States v. Seals (C.A.5 1993), 987 F.2d 1102,1106.[6] Once the dog alerted police to the odor of drugs, the officers then had probable cause to search appellant's van. SeeState v. French (1995), 104 Ohio App.3d 740, 749, 663 N.E.2d 367,372; State v. Palicki (1994), 97 Ohio App.3d 175, 181,646 N.E.2d 494, 498; State v. Coonrod (Feb. 2, 1999), Ross App. No. 98CA2411, unreported; also see United States v. Blaze (C.A.10 1998), 143 F.3d 585, 592; United States v. Reed (C.A.6 1998),141 F.3d 644, 649; United States v. Williams (C.A.5 1995),69 F.3d 27, 28. Obviously, in order to conduct a proper search of the van, appellant had to be removed from the vehicle. This brings us to the discovery and seizure of the marijuana.
For their own protection police officers may, during investigative stops, conduct pat-down searches for weapons if the officers have reason to believe the suspect is armed and dangerous. See Terry, supra at 27, Adams v. Williams (1972),407 U.S. 143, 146, 32 L.Ed.2d 612, 617, 92 S.Ct. 1921, 1923; also seeState v. White (1996), 110 Ohio App.3d 347, 353, 674 N.E.2d 405,409. These sorts of Terry type pat-downs generally raise two (2) separate and distinct questions: (1) was the pat-down justified in the first place; and (2) if it was justified, did police conduct themselves within the lawful scope of the pat-down. Seegenerally State v. Evans (1993), 67 Ohio St.3d 405, 408-416;618 N.E.2d 162, 166-171.
With respect to the first of these issues, appellant was asked to step out of the van after a positive reaction from a drug sniffing dog. Officer Washburn testified below that appellant was then given a pat-down in order to check for weapons and ensure the safety of the investigating officers. While the better practice would have been to give a more detailed explanation of these safety concerns, we nevertheless conclude that such testimony was minimally sufficient to explain and justify the pat-down.[7]
The next question is whether law enforcement officers exceeded the scope of a lawful weapons pat-down. This is the point that appellant challenges the actions taken by Officer Washburn and the Chillicothe police. Appellant argues that by removing the baggie of marijuana from his pants, Officer Washburn exceeded the scope of a lawful weapons pat-down. In support of that proposition, appellant cites us to our previous decision in Statev. White (1996), 110 Ohio App.3d 347, 674 N.E.2d 405, wherein a majority of this Court held that police conducted an unlawful pat-down search and that "rocks" of crack cocaine seized during that search should have been suppressed. Appellant contends that the marijuana taken from him in this case should have, likewise, been suppressed because police exceeded the boundaries of a lawful search for weapons. We disagree.
As we mentioned above, two issues are involved with a weapons pat-down. Those issues are: (1) whether the pat-down was justified in the first place (and we have already determined that it was here); and (2) whether the police exceeded the proper scope of the pat-down. Appellant's reliance on our previous decision in White is misplaced because in White we did not resolve the first of these issues in favor of police. Indeed, all three (3) judges in White agreed that the search therein was not a lawful Terry type pat-down for weapons.[8] This case is clearly distinguishable because in the case sub judice we have already determined that the pat-down was a justified search for weapons under Terry.
Having said that, we must still ascertain whether police stayed within the boundaries of a lawful pat-down. Our analysis begins with the trial court's December 3, 1998 judgment, wherein the court ruled that Officer Washburn's seizure of marijuana was justified under the "plain feel" exception to Fourth Amendment warrant requirements. The so-called "plain feel" doctrine was adopted by the United States Supreme Court in Minnesota v.Dickerson (1993), 508 U.S. 366, 124 L.Ed.2d 2130, 113 S.Ct.2130. The court held that if a police officer pats down a suspect's outer clothing and feels an object whose contour and mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by a pat-down for weapons under Terry. Id. at 375-376,124 L.Ed.2d at 346, 113 S.Ct. at 2137. However, the nature of the contraband must be "immediately apparent" to the officer at the time it is felt, rather than being determined after the search. Id. at 379,124 L.Ed.2d at 348, 113 S.Ct. at 2139. This means that police officers cannot simply start removing random (unidentified) items from clothing, discover that those items are contraband and then retroactively justify seizure of that evidence on the basis of "plain feel."[9] Likewise, if the illegal nature of the suspicious object is not immediately apparent, police are not permitted to continue touching, feeling or manipulating the object to identify its nature.
Officer Washburn gave the following testimony on direct, cross and re-direct examination:
 "[Q] You made observations of Officer Hartley's canine dog and Officer Hartley, and then what happened?
[A] After the dog alerted to the vehicle?
[Q] Yes.
[A] We asked Mr. Kennedy to exit the vehicle.
 [Q] And what happened after Mr. Kennedy exited his vehicle?
 [A] I told him to put his hands on top of the car, I was going to pat him down for the officer's safety.
[Q] And then what happened?
 [A] I found a baggie in the front part of his pants that was partially sticking out. Took the baggie out and . . .
[Q] What did you see in the baggie, if anything?
 [A] There was what appeared to be marijuana. Green leafy vegetation.
* * *
 [Q] The baggie was sticking out of his pants? The pocket?
[A] Out of the front part of his pants right here.
* * *
[Q] Did you see that or feel it?
[A] Felt it.
* * *
[Q] What was Mr. Kennedy wearing that night?
 [A] He had a loose shirt on that night. I can remember that it was not tucked in.
[Q] Did he have shorts" Jeans" Sweat pants?
[A] I don't remember exactly what kind of pants he wore.
 [Q] Mr. Kennedy's shirt however was not tucked in, right?
[A] Right.
[Q] It was overhanging his waistline on his pants?
[A] Right.
 [Q] It was covering what you later discovered in his pants, correct?
[A] Right.
 [Q] You patted him down and felt something soft, correct?
 [A] Felt a plastic baggie. Once you touched it, you could hear that it was a cellophane baggie.
 [Q] You could hear a noise. Didn't feel like a weapon, did it?
[A] No.
* * *
 [Q] Officer Washburn, when you felt and heard what you believed to be cellophane, what did that alert you to based on your past experience?
 [A] Some type of . . let me rephrase it. Most of the times that I have patted someone down and felt cellophane or a plastic baggie concealed like that, the majority of the time its been a an illegal substance such as marijuana." (Emphasis added).
The clear gist of Officer Washburn's testimony was that the item felt underneath appellant's shirt, hanging out of the waistband of his pants, was "immediately apparent" as a baggie, and that baggies concealed in that manner, on that portion of the body, usually contain illegal substances. This testimony was accepted by the trial court which then ruled that the officer lawfully seized the baggie under the "plain feel" doctrine. We find no error.[10]
To begin, whether items felt by police are "immediately apparent" as contraband is a question of fact for the trial court which is in a much better position than this Court to gauge police credibility. See State v. Brandon (1997), 119 Ohio App.3d 594,596, 695 N.E.2d 1195, 1196; State v. Woods (1996), 113 Ohio App.3d 240,244, 680 N.E.2d 729, 732; State v. Phelps (Jul. 31, 1998), Montgomery App. No. 77064, unreported. This Court ordinarily will not second guess trial courts on questions of weight of evidence and credibility of witnesses. We particularly decline to do so here given the facts and circumstances of this case.
Officer Washburn stated that once he touched the baggie underneath appellant's shirt, he knew what he was touching. No further manipulation of the object was required on his part. Furthermore, in recognizing this object as a baggie containing contraband, Officer Washburn relied on his years of experience as a police officer that this was the manner by which drugs are concealed. The training and experience of a police officer in this regard has been characterized as crucial in determining whether objects felt are "immediately apparent" as contraband. See Annotation (1997), 50 A.L.R.5th 581, 599, § 2[b]. It is also worth repeating that, before the pat-down was even conducted, a drug sniffing dog had already alerted police to the smell of drugs. Given these circumstances, we find no error in the trial court's determination that the baggie of marijuana was properly seized pursuant to the "plain feel" doctrine.
We note that our ruling herein is consistent with the outcome of similar cases in this state, see e.g. State v. Hunter (1994),98 Ohio App.3d 632, 636, 649 N.E.2d 289, 292 (rock of crack cocaine in baggie was immediately apparent as contraband); Statev. Burchard (Jun. 8, 1998), Licking App. No. 97CA132, unreported (baggie full of marijuana was immediately apparent to police) as well as cases from other states. See e.g. State v. Trine (Conn. 1996), 673 A.2d 1098, 1106-1107 (seizure of rock of crack cocaine in baggie upheld as "immediately apparent" to officer with no further manipulation of object); People v. Mitchell (Ill. 1995),650 N.E.2d 1014, 1023-1024 (rock of crack cocaine found to be "immediately apparent" under plain feel doctrine because of experience of the officer and lack of any further manipulation);State v. Scott (Ia. 1994), 518 N.W.2d 347, 349-350 (seizure of marijuana "join" in baggie held lawful because officer knew what it was without any further manipulation).
We again emphasize that the question of whether a certain object is "immediately apparent" as contraband to an officer performing a pat-down search is a question of fact for the trial court. Consequently, the unique facts and circumstances present in each case, including a particular officer's training and experience, must be fully considered. Moreover, we again note that a trial court occupies the best position to judge witness credibility and that appellate courts should generally defer to trial court findings regarding witness credibility.
For these reasons, we find no merit in either assignment of error and they are both overruled. The judgment of the trial court is hereby affirmed.
JUDGMENT AFFIRMED.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Harsha, J. Evans, J.: Concur in Judgment Opinion
For the Court
 BY: _________________________ Peter B. Abele, Judge
 NOTICE TO COUNSEL
Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.
[1] Appellant's brief does not contain any designated assignments of error as required by App.R. 16. We have therefore taken the following sub-headings from various portions of his argument and will treat them as assignments of error.
[2] We parenthetically note that appellant framed his argument on appeal by arguing that police lacked "probable cause" to stop his vehicle. To be more specific and accurate, however, we must view this argument under the "reasonable suspicion" standard. The "reasonable suspicion" standard necessary for a valid Terry type stop is a lesser standard, and is not synonymous with, "probable cause." See Alabama v. White (1990), 496 U.S. 325, 330,110 L.Ed.2d 301, 309, 110 S.Ct. 2412, 2416; also see State v.Brandenburg (1987), 41 Ohio App.3d 109, 110, 534 N.E.2d 906, 908;State v. Sheets (Mar. 16, 1994), Gallia App. No. 93CA07, unreported. Thus, police officers are not required to show a probable cause basis for investigatory stops. State v. Zampini
(1992), 79 Ohio App.3d 608, 610, 607 N.E.2d 933, 935; State v.Poynter (1992), 78 Ohio App.3d 483, 485, 605 N.E.2d 429, 430-431;also see United States v. Hines (C.A.4 1991), 943 F.2d 348, 352;United States v. Topia (C.A.11 1990), 912 F.2d 1367, 1370; UnitedStates v. Thompson (C.A.8 1990), 906 F.2d 1292, 1295.
[3] The cases cited by appellant include State v. Brite (1997),120 Ohio App.3d 517, 698 N.E.2d 478; State v. Woods (1993),86 Ohio App.3d 423, 621 N.E.2d 523; State v. Williams (1993),86 Ohio App.3d 37, 619 N.E.2d 1141; State v. Gullett (1992),78 Ohio App.3d 138, 604 N.E.2d 176. All of these cases involved drivers who were stopped by police after having been observedinter alia weaving within their lane of travel.
[4] Police usually stop weaving cars for one of two reasons; either they believe the driver is under the influence or they intend to cite the driver for violating R.C. 4511.33 (A) which requires vehicles to be driven "as nearly as is practicable
entirely within a single lane or line of traffic." (Emphasis added.) In either case, the critical issues to be determined are the frequency, duration and severity of the weaving. Many courts, including this one, have ruled that minor instances of weaving may be insufficient to give rise to a reasonable suspicion of drunk driving. See Brite, supra at 522, 698 N.E.2d at 481; alsosee Hamilton v. Lawson (1994), 94 Ohio App.3d 462, 463,640 N.E.2d 1206, 1207; Mason v. Loveless (1993), 87 Ohio App.3d 264,266, 622 N.E.2d 6, 7. Similarly, because of the manner in which R.C. 4511.33 (A) is drafted, requiring only that vehicles be driven in a single lane "as nearly as is practicable," we have held that not every instance of weaving warrants stopping the car for violation of that statute. See Williams, supra at 42-43,619 N.E.2d at 1144-1145; Gullett, supra at 144-145,604 N.E.2d at 180-181. Neither of these problems exist here. In this case, appellant was not stopped for violating R.C. 4511.33 (A), or for suspicion of driving under the influence, but rather because he was observed violating Chillicothe Ordinance 331.01 (a). That ordinance specifically prohibits driving on the left side of the road except under certain circumstances which are not applicable here. The uncontroverted testimony of Officer Washburn was that appellant was driving "very close to the [left] curb . . ." For all these reasons, we believe that the analytical framework under which we consider "weaving car" cases has no bearing on the causesub judice.
[5] We note that appellant has not alleged that the officers improperly extended the investigative stop's duration in order to use the canine unit. In fact, it appears that the canine unit quickly arrived at the scene. Of course, a valid basis for an initial investigative stop will not, standing alone, support a prolonged detention while authorities search for evidence of other crimes. See, generally, State v. Venham (1994), 96 Ohio App.3d 649,645 N.E.2d 831; United States v. Brignoni-Ponce
(1975), 422 U.S. 873, 45 L.Ed.2d 607, 95 S.Ct. 2574.
[6] More than a decade ago, the United States Supreme Court held that the use of dogs to sniff and detect drugs in luggage did not violate any reasonable expectation of privacy and, thus, did not implicate Fourth Amendment concerns. See United States v.Place (1983), 462 U.S. 696, 707, 77 L.Ed.2d 110, 121,103 S.Ct. 2637, 2645. That principle was subsequently extended to automobiles. See e.g. United States v. Holloman (C.A.11 1997),113 F.3d 192, 194; United States v. Seals (C.A.5 1993),987 F.2d 1102, 1106. Thus, today, it is well settled that the use of dogs to detect drugs in otherwise lawfully detained vehicles does not give rise to any search and seizure concern under the United States or Ohio Constitutions. See State v. French (1995),104 Ohio App.3d 740, 749, 663 N.E.2d 367, 372; State v. Waldroup
(1995), 100 Ohio App.3d 508, 514, 654 N.E.2d 390, 394; State v.Riley (1993), 88 Ohio App.3d 468, 476, 624 N.E.2d 302, 307.
[7] There is an interesting line of caselaw from the Federal Fourth Appellate Circuit recognizing that guns often accompany drugs, see United States v. Sakyi (C.A.4 1998), 160 F.3d 164,169, United States v. Stanfield (C.A.4 1997), 109 F.3d 976, 984,United States v. Perrin (C.A.4 1995), 45 F.3d 869, 873, and therefore a proper pat-down is supported simply by the officer's objectively reasonable belief that drugs are in the vehicle.Sakyi, supra at 169. This is consistent with an observation by the, Ohio Supreme Court that drug dealers are usually armed and that the right to frisk is "virtually automatic" when approaching suspected traffickers. See State v. Evans (1993), 67 Ohio St.3d 405,413, 618 N.E.2d 162, 169. Although such principles have not been applied to our decision here, we would parenthetically note that the police would have been justified in conducting a weapons pat-down thereunder given the reaction of the drug sniffing dog.
[8] Both the author of the opinion in the instant case (who authored the lead opinion in White) and Judge Stephenson agreed that the search therein was not a lawful weapons pat-down, in part, because police expressly testified that they were frisking the suspect to discover contraband which is clearly not permitted on a Terry pat-down. See State v. White (1996), 110 Ohio App.3d 347,355, 674 N.E.2d 405, 410; Id. at 357-358, 674 N.E.2d at 412
(Stephenson, J. Concurring). Even the dissent agreed that the search was not lawful under Terry guidelines. Id. at 359,674 N.E.2d at 413 (Kline, J. Dissenting).
[9] This doctrine was only tangentially related to our decision in the White case (upon which appellant relies in his argument). As noted above, "plain feel" does not enter into the analysis unless it is already determined that police are conducting a lawful weapons pat-down. Obviously, if the pat-down is unlawful, then it makes little difference that officers could readily identify items they touched as contraband; the search itself was still unlawful and any items seized would have to be suppressed. Again, this Court unanimously held in White, supra that the search therein was not a lawful Terry weapons pat-down.
[10] Although not dispositive to our decision herein, it is worth pointing out that the degree of concealment of the contraband is another distinction between this case and our previous decision in White, supra. The crack cocaine at issue therein was "secreted away between layers of socks inside hightop tennis shoes." 110 Ohio App.3d at 358, 674 N.E.2d at 412-413
(Stephenson, J. Concurring). Obviously, police officers would have had to exert considerably more effort to actually "feel" the contraband in that case as opposed to this case where it was simply hanging out of appellant's pants and covered only by a shirt which was not tucked in.