[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No.  11-13024
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
MARCH 15, 2012
JOHN LEY
CLERK

D.C. Docket No. 8:10-cr-00254-EAK-EAJ-1


UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

ROBERT STEVEN HARRELSON,

Defendant-Appellant.


_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 15, 2012)

Before TJOFLAT, PRYOR and KRAVITCH, Circuit Judges.

PER CURIAM:

On the night of March 26, 2010, officers of the Hardee County (Florida)

Sheriff's drug task force team, acting on information provided by the DeSoto County (Florida) Sheriff's office to the effect that Robert Harrelson was headed for Hardee County in his truck to deliver methamphetamine to a suspected drug trafficker, stopped Harrelson's vehicle, searched it, found a large role of currency (on Harrelson's person) and, in a zippered bag, 6.8 grams of methamphetamine and drug paraphernalia. The officers arrested Harrelson, and a Middle District of Florida grand jury indicted him for possession with the intent to distribute methamphetamine, in violation of 21 U.S.C. § 841(a)(1).

Harrelson moved the district court to suppress the evidence seized from his person and his vehicle, and the district court, adopting the recommendation of the magistrate judge made after conducting an evidentiary hearing on the motion, denied the motion. Harrelson thereafter consented to a bench trial before the district court. The court found him guilty as charged and sentenced him to prison for 24 months. Harrelson now appeals his conviction, contending that the district court erred in denying his motion to suppress.

The district court denied Harrelson's motion to suppress on two alternative grounds: (1) the officers had reasonable suspicion to stop Harrelson for methamphetamine trafficking; and (2), the officers had probable cause to stop his vehicle for having unlawfully tinted windows and/or a modified muffler.

2

Harrelson argues that the evidence adduced at the evidentiary hearing supported neither ground. He says the first ground lacks support because the officers were acting merely on an "impermissible hunch." The second ground fails because the officers lacked probable cause to stop his vehicle for traffic law violations. We consider these arguments in turn.[1]

## I.

The Fourth Amendment protects individuals from unreasonable search and seizure. U.S. Const. Amend. IV. Law enforcement officers may seize a suspect for a brief, investigatory stop where the officers have a reasonable suspicion that the suspect was involved in, or is about to be involved in, criminal activity. *Terry v. Ohio*, 392 U.S. 1, 30, 88 S.Ct. 1868, 1884, 20 L. Ed.2d 889 (1968). Reasonable suspicion is determined from the collective knowledge of all of the officers involved in the stop. *United States v. Williams*, 876 F.2d 1521, 1524 (11th Cir. 1989). The reasonable suspicion must be more than an "inchoate and unparticularized suspicion." *Terry*, 392 U.S. at 27, 88 S.Ct. at 1883. We look at the totality of the circumstances to ascertain "whether the detaining officer ha[d] a

---

[1] "A district court's ruling on a motion to suppress presents mixed questions of law and fact." *United States v. Ramirez-Chilel*, 289 F.3d 744, 748-49 (11th Cir. 2002). We review the court's findings of fact for clear error and its application of the law to those facts de novo. *Id.* at 749.

3

particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 750, 151 L.Ed.2d 740 (2002). Officers may "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* at 273, 122 S.Ct. at 750-51 (quotation omitted). While a "mere hunch" is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard. *Id.*, 122 S.Ct. at 751.

Here, the totality of the circumstances demonstrate that the police were acting upon more than an "impermissible hunch" when they conducted an investigative stop of Harrelson's vehicle. As he testified at the evidentiary hearing, Lieutenant Aument of the DeSota County Sheriff's office learned on March 16, 2010 from a known, previously reliable CI that Little Rob was a supplier of methamphetamine and drove a red Ford F-150 truck. Through his investigation, he identified Little Rob as Harrelson.

Ten days later, on March 26, Aument received a tip from Officer Pitts of the Arcadia (Florida) Police Department that Harrelson was going to deliver methamphetamine to a residence in Arcadia. The Arcadia police were watching

4

for Harrelson's Ford truck, but never observed it entering the city limits. When Aument learned that Harrelson had not gone to Arcadia, he contacted Sergeant Davis with the Hardee County drug task force and told him to watch for Harrelson driving the red F-150; Aument's investigation revealed that Harrelson had very close ties to individuals in Hardee County, and the information was that Harrelson would be delivering methamphetamine that night.

Based on Davis's on-going investigation of Harrelson, Davis suspected that Harrelson may be visiting an associate who lived on Morgan Road in Hardee County and was under investigation for selling methamphetamine. Davis instructed his detectives to set up in various locations and keep an eye out for Harrelson's red Ford truck. Given the fact that the officers were relying on information gained from on-going law enforcement investigations of Harrelson and in light of their professional experiences, the magistrate judge, and thus the district court, did not err in finding that the officers had a reasonable suspicion that Harrelson was transporting methamphetamine. *See Arvizu*, 534 U.S. at 273, 122 S.Ct. at 750-51.

## II.

A traffic stop is reasonable, and therefore constitutional, if the officer conducting the stop has probable cause to believe that a traffic violation has

occurred. *United States v. Harris*, 526 F.3d 1334, 1337 (11th Cir. 2008). To determine whether the officer had probable cause, we do not focus on the officer's subjective motives; rather, we focus on whether the circumstances, viewed objectively, justified the stop. *Whren v. United States*, 517 U.S. at 812-13, 116 S.Ct. at 1774. *Whren* "squarely rejected the pretextual stop analysis"; the reasonableness of a traffic stop is determined irrespective of the officer's intent. *United States v. Holloman*, 113 F.3d 192, 194 (11th Cir. 2007). That is, "[*Whren*] conclusively refute[d] the notion that ulterior motives may invalidate police conduct that is justified on the basis of probable cause to believe that a violation of law has occurred." *Id.* *Holloman* held that, because the officers making the traffic stop had probable cause to believe that a traffic violation had occurred, they did not violate the Fourth Amendment, "notwithstanding their subjective desire to intercept any narcotics being transported" into the county. *Id.*; *see also Draper v. Reynolds*, 369 F.3d 1270, 1275-76 (11th Cir. 2004) (discussing *Whren* and *Holloman* in the context of a suit brought pursuant to 42 U.S.C. § 1983, and determining that the "only question" for purposes of determining whether the traffic stop at issue was reasonable under the Fourth Amendment was whether the officer had probable cause to believe a traffic violation occurred, although the motorist alleged that the officer's reason for the stop was pretextual).

Harrelson does not contest the fact that the police had probable cause to believe that he had committed a traffic violation. He argues, instead, that since the officers did not come across him as part of a routine patrol, but had been sent out to look out for him, *Whren* is inapplicable.

The pertinent language in *Whren* does not suggest that only those traffic stops that arise from suspicious behavior observed by an officer while on routine patrol are "run-of-the-mine" cases. *See Whren*, 517 U.S. at 818-19, 116 S.Ct. at 1776-77. Rather, *Whren* indicates that a stop must be conducted in an extraordinary manner to be considered not "run-of-the-mine." *See id.* at 818, 116 S.Ct. at 1776. No evidence was submitted at the suppression hearing to the effect that the stop was conducted in an extraordinary manner. Consequently, the district court did not err in denying Harrerlson's motion to suppress.

AFFIRMED.