[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-13937

Non-Argument Calendar

_____

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

*versus*

KWUAN MONTRELL BAKER,

Defendant-Appellant.

_____

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 2:22-cr-14012-AMC-1

_____

Before BRASHER, ABUDU, and MARCUS, Circuit Judges.

PER CURIAM:

Kwuan Montrell Baker appeals his convictions for possession with intent to distribute fentanyl and possession of a firearm in furtherance of a drug trafficking crime, challenging the district court's denial of his motion to suppress evidence obtained following a traffic stop of a vehicle in which he was a passenger. After thorough review, we affirm.

We review the denial of a motion to suppress evidence under a mixed standard, reviewing the court's factfinding for clear error and its application of the law to those facts *de novo*. *United States v. Lewis*, 674 F.3d 1298, 1302–03 (11th Cir. 2012). We grant substantial deference to the credibility determinations of the district court, construing all facts in the light most favorable to the prevailing party. *Id.* at 1303. We must accept the version of events adopted by the district court "unless it is contrary to the laws of nature[] or is so inconsistent or improbable on its face that no reasonable factfinder could accept it." *United States v. Ramirez-Chilel*, 289 F.3d 744, 749 (11th Cir. 2002) (quotations omitted).

The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. Amend. IV. Under the exclusionary rule, evidence cannot be used against a defendant in a criminal trial where that evidence was obtained via an encounter with police that violated the Fourth Amendment. *United States v. Perkins*, 348 F.3d 965, 969 (11th Cir. 2003). A traffic stop is a seizure

within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10 (1996). The Supreme Court previously set forth a probable cause standard for determining whether a traffic stop based on a traffic violation is valid. *Id.* at 810. However, it has since made clear that an officer needs only reasonable suspicion, not probable cause, to justify an automobile stop that is based on a traffic violation. *Heien v. North Carolina*, 574 U.S. 54, 57, 60 (2014); *see also United States v. Campbell*, 26 F.4th 860, 880 n.15 (11th Cir. 2022) (*en banc*) (stating that "the Supreme Court has . . . made clear that reasonable suspicion is all that is required" to justify a traffic stop based on a traffic violation (citing *Heien*, 574 U.S. at 60)).

The reasonableness of a seizure, including a traffic stop, "depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law [enforcement] officers." *United States v. Brignoni-Ponce*, 422 U.S. 873, 878 (1975). "[R]easonable suspicion, like probable cause, is not readily, or even usefully, reduced to a neat set of legal rules." *United States v. Sokolow*, 490 U.S. 1, 7 (1989) (quotations omitted). Reasonable suspicion is "considerably less than proof of wrongdoing by a preponderance of the evidence" and less than probable cause, which is "a fair probability that contraband or evidence of a crime will be found." *Id.* (quotations omitted). When deciding if reasonable suspicion exists, we must review the "totality of the circumstances" to ascertain whether an officer had a "particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (quotations omitted). In so doing, we must give due weight to an officer's experience. *United*

*States v. Briggman*, 931 F.2d 705, 709 (11th Cir. 1991). None of the suspect's actions, however, need be criminal on their face to provide a trained officer with reasonable suspicion. *United States v. Lee*, 68 F.3d 1267, 1271 (11th Cir. 1995).

An arresting officer's state of mind, except for the facts he knows, is irrelevant to the existence of probable cause. *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004). An officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Id.* "A traffic stop based on an officer's incorrect but reasonable assessment of facts does not violate the Fourth Amendment." *United States v. Chanthasouxat*, 342 F.3d 1271, 1276 (11th Cir. 2003). Officers may rely on "common sense conclusions" in assessing the facts. *United States v. Cortez*, 449 U.S. 411, 418 (1981). Reasonable suspicion is determined from the collective knowledge of all officers involved in the stop. *United States v. Tapia*, 912 F.2d 1367, 1370 (11th Cir. 1990).

A pretextual stop occurs when an officer, hoping to find evidence of a greater offense, pursues a lesser offense that he normally would not. *United States v. Smith*, 799 F.2d 704, 710 (11th Cir. 1986). However, in *Whren*, the Supreme Court held that an officer's subjective motivations have no bearing on whether a traffic stop is reasonable under the Fourth Amendment. 517 U.S. at 813. So, in *United States v. Holloman*, we held that, because the officers had probable cause to believe a traffic violation occurred in connection with a traffic stop, they did not violate the Fourth Amendment, "notwithstanding their subjective desire to intercept any

narcotics being transported." 113 F.3d 192, 194 (11th Cir. 1997). In other words, while the Fourth Amendment requires courts to "weigh the governmental and individual interests implicated in a traffic stop," the "result of that balancing is not in doubt where the search or seizure is based upon probable cause." *Whren*, 517 U.S. at 816–17. Thus, a detailed "balancing" analysis -- that weighs the governmental and individual interests implicated in a traffic stop -- is necessary only in "rare" situations that "involve[] seizures without probable cause" or "searches or seizures conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests." *Id.* at 817–18.

Under Florida law, a person is guilty of driving under the influence if he is driving or in actual physical control over a vehicle and is affected by a substance to the extent that his normal faculties are impaired. Fla. Stat. § 316.193 (2021). In addition, Florida law prohibits driving with side windows tinted beyond certain limits; *i.e.*, "[a] sunscreening material is authorized for such windows if, when applied to and tested on the glass of such windows on the specific motor vehicle, the material has a total solar reflectance of visible light of not more than 25 percent as measured on the nonfilm side and a light transmittance of at least 28 percent in the visible light range." Fla. Stat. § 316.2953 (2021). A suspected violation of Florida's window-tint law "provides a valid basis for a traffic stop." *United States v. Pierre*, 825 F.3d 1183, 1192 (11th Cir. 2016).

Florida law also makes it "unlawful for the operator of any vehicle, having knowledge that he or she has been ordered to stop

such vehicle by a duly authorized law enforcement officer, willfully to refuse or fail to stop the vehicle in compliance with such [an] order." Fla. Stat. § 316.1935(1) (2021). Florida caselaw interpreting this provision has found that a high-speed chase or other drawn-out form of fleeing is not required to trigger the attempted eluding provision of Fla. Stat. § 316.1935(1). *Steil v. State*, 974 So. 2d 589, 589–90 (Fla. 4th Dist. Ct. App. 2008). Moreover, because it is suggestive of wrongdoing, unprovoked flight may serve as the basis for a reasonable suspicion that the person fleeing is involved in criminal activity. *Illinois v. Wardlow*, 528 U.S. 119, 124–25 (2000).

Here, Baker moved to suppress evidence of a firearm, ammunition, and drugs that were obtained by law enforcement during a traffic stop of Jordan Kane's vehicle, in which Baker was a passenger. This evidence was used to charge Baker with possession with intent to distribute fentanyl and possession of a firearm in furtherance of a drug trafficking crime. In arguing that the evidence obtained during the traffic stop should have been suppressed, Baker claims that no alleged traffic violation occurred, that law enforcement otherwise lacked probable cause to stop Kane's vehicle, and that the stop was pretextual. Thus, Baker urges us to review the reasonableness of the traffic stop based on the circumstances that surrounded it, including the officers' subjective motivations for the stop. However, as we've explained, an arresting officer's state of mind, except for the facts that he knows, is irrelevant to the existence of probable cause, and an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause." *Devenpeck*, 543 U.S. at 153.

In other words, so long as officers had a reasonable suspicion of a traffic violation by Kane, it is irrelevant whether the stop was pretextual or that officers did not arrest Kane based on any or all these grounds. *Id*.; *Holloman*, 113 F.3d at 194; *see also Campbell*, 26 F.4th at 880 n.15.

The district court found that the officers had reasonable suspicion to stop Kane based on three grounds: (1) driving under the influence, (2) an illegal window tint, and (3) attempting to flee from officers. As we'll explain, Deputy Evan Ridle and the other deputies of the St. Lucie County Sheriff's Office ("SLCSO") had more than enough reasonable suspicion to stop Kane based on the first ground -- driving under the influence -- so we'll address that issue in detail, and need not address the others.

As the record reflects, at the time of the traffic stop, Deputy Ridle had knowledge of Kane from previous arrests for drug cases in St. Lucie County, some of which he had personally performed, and Ridle knew that Kane had recently failed a drug test, failed to show up for a drug test on the day prior to the traffic stop, and had a roommate believed to be selling narcotics. As for Deputy Tomaszewski, he initially saw Kane stop that day at a smoke shop that was known to sell detox-related products to help pass drug tests. After Kane finished an appointment at the courthouse, Tomaszewski observed Kane's head lean out the side of his vehicle and saw "the vomit coming down and splattering on the asphalt there" and reported this over radio to other deputies. Kane then left the parking lot and drove toward an area known for "gun

violence, drug sales, prostitution, and gang members" where he stopped at a residence and remained in the driveway for five minutes. After Kane departed from the residence, Deputy Ridle saw Kane drifting over the center line and failing to maintain his lane. Ridle said that he believed that Kane's failure to maintain his single lane was because the narcotics that Kane had consumed were taking effect.[1]

Taking into account the collective knowledge the SLCSO officers involved in the stop and their "commonsense conclusions," law enforcement had a sufficient "particularized and objective basis" for suspecting legal wrongdoing by Kane -- that is, they reasonably could have concluded from Kane's activities shortly before the traffic stop that he was intoxicated by narcotics while driving and was therefore in violation of Fla. Stat. § 316.193. *Cortez*, 449 U.S. at 418; *Arvizu*, 534 U.S. at 273; *Tapia*, 912 F.2d at 1370. Moreover, nothing in the record suggests that this case amounted to a "rare" situation involving a "seizure[] without probable cause" or a "search[] or seizure[] conducted in an extraordinary manner, unusually harmful to an individual's privacy or even physical interests." *Whren*, 517 U.S. at 817–18. Rather, as we've explained, the officers

---

[1] In considering Baker's claim, we must give due weight to Ridle's experience with users of narcotics as an SLCSO Deputy for approximately five years and a member of the Special Investigations Section, Narcotics, Vice Division. *Briggman*, 931 F.2d at 709. We add that the district court found Ridle's testimony credible, and we must accept this version of the events because his testimony was not "improbable on its face" and the government prevailed in the district court. *Ramirez-Chilel*, 289 F.3d at 749; *Lewis*, 674 F.3d at 1302–03.

had reasonable suspicion to stop Kane based upon driving under the influence, which means that this case "is governed by the usual rule that probable cause to believe the law has been broken 'outbalances' private interest in avoiding police contact." *Id*. at 818.  Accordingly, the initiation of the traffic stop of Kane's vehicle -- which led to the seizure of the evidence that was used against Baker -- did not violate the Fourth Amendment, and we affirm the district court's denial of Baker's motion to suppress.

**AFFIRMED.**