The STATE of Ohio, Appellee,

v.

BRITE, Appellant.

[Cite as *State v. Brite* (1997), 120 Ohio App.3d 517.]

Court of Appeals of Ohio,
Fourth District, Athens County.

No. 96CA1778.

Decided June 23, 1997.

*Lisa A. Eliason,* for appellee.

*Eslocker, Hodson & Oremus Co., L.P.A.,* and *Thomas S. Hodson,* for appellant.

Stephenson, Presiding Judge.

This is an appeal from a judgment entered by the Municipal Court of Athens, Ohio, upon a plea of "no contest," finding Vernon Brite, defendant below and appellant herein, guilty of operating a motor vehicle while the alcohol concentra-

tion in his body was in excess of ten-hundredths of one gram per two hundred ten liters of breath as proscribed by R.C. 4511.19(A)(3). The following error is assigned for our review:

"The trial court erred in finding that there was reasonable articulable suspicion for the law enforcement officer to stop the defendant's vehicle."

. The record reveals the following facts pertinent to this appeal. In the early morning hours of June 9, 1996, appellant left the parking lot of "Club 33" in Athens, Ohio. He proceeded home on State Route 13 to U.S. Route 33 and was travelling east when Trooper Keith Fellure of the Ohio State Highway Patrol began following him.[1] The officer noted appellant's car weaving within its lane of travel and signaled for the driver to pull over. Upon approaching the vehicle, Trooper Fellure noted "a strong odor of alcohol" about appellant's person. Several field sobriety tests were administered and, when appellant performed unsuccessfully, he was arrested and given a breath test. The results of that test showed that appellant had 0.117 grams of alcohol per two hundred ten liters of his breath. He was thereafter charged with violating R.C. 4511.19(A)(3).

Appellant initially entered a plea of not guilty and filed a motion to suppress the results of his breath test, arguing that Trooper Fellure lacked reasonable facts upon which to stop him for suspicion of drunk driving. The matter came on for hearing on September 7, 1996, at which time Trooper Fellure testified to having observed appellant's car weaving on the night in question. He stated that appellant drove over the right-hand edge lines of the road on two occasions during the span of a mile. However, the witness conceded that appellant never went left of center or violated any other traffic laws. A ruling was made from the bench at the conclusion of the hearing, denying the motion to suppress. Appellant thereafter changed his plea to "no contest" and was found guilty. He was given *inter alia* a suspended thirty-day jail sentence and a partially suspended $500 fine. This appeal followed.

Appellant argues in his assignment of error that the lower court mistakenly overruled his motion to suppress. It should be noted at the outset that appellate review of a ruling on a motion to suppress presents a mixed question of law and fact. See *United States v. Martinez* (C.A.11, 1992), 949 F.2d 1117, 1119; *United States v. Mejia* (C.A.9, 1991), 953 F.2d 461, 464–465; *United States v. Wilson* (C.A.11, 1990), 894 F.2d 1245, 1254. A trial court assumes the role of trier of fact during proceedings on a motion to suppress, *State v. Payne* (1995), 104 Ohio App.3d 364, 367, 662 N.E.2d 60, 61–62; *State v. Robinson* (1994),

---

1. Appellant contends that he was followed "almost as soon as" he left Club 33 and turned onto State Route 13. Trooper Fellure, on the other hand, did not recall the point at which he began to follow the suspect.

98 Ohio App.3d 560, 570, 649 N.E.2d 18, 24; *State v. Rossiter* (1993), 88 Ohio App.3d 162, 166, 623 N.E.2d 645, 648, and the evaluation of evidence and credibility of witnesses during such proceedings are issues to be determined by the trial court. *State v. Brooks* (1996), 75 Ohio St.3d 148, 154, 661 N.E.2d 1030, 1036–1037; *State v. Carter* (1995), 72 Ohio St.3d 545, 552, 651 N.E.2d 965, 973; *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 57–58, 437 N.E.2d 583, 584–585. A court's factual findings are to be accepted unless they are "clearly erroneous." See *United States v. Lewis* (C.A.1, 1994), 40 F.3d 1325, 1332. That is to say that a reviewing court is bound to accept the factual determinations of a trial court during a suppression hearing so long as they are supported by competent and credible evidence. *State v. Harris* (1994), 98 Ohio App.3d 543, 546, 649 N.E.2d 7, 9; *State v. Claytor* (1993), 85 Ohio App.3d 623, 627, 620 N.E.2d 906, 908–909; see, also, *State v. DePalma* (Jan. 18, 1991), Ross App. No. 1633, unreported, 1991 WL 13824. The application of the law to those facts, however, is then subject to *de novo* review. *Harris, supra,* at 546, 649 N.E.2d at 9; *State v. Anderson* (1995), 100 Ohio App.3d 688, 691, 654 N.E.2d 1034, 1036; see, also, *Lewis, supra,* 40 F.3d at 1332; *Wilson, supra,* 894 F.2d at 1254.

■ Appellant is not challenging any factual findings on appeal. Indeed, the facts in this case appear to be largely undisputed. It is instead the application of the law to those facts that is being contested on appeal. Specifically, appellant contends that Trooper Fellure did not have a reasonable basis for believing that appellant was engaging in criminal activity. Thus, appellant concludes, it was error to rule that the stop of his vehicle was constitutionally valid. We agree.

■ Our analysis begins with the Fourth and Fourteenth Amendments to the United States Constitution, as well as Section 14, Article I of the Ohio Constitution, which prohibit the investigatory stop of a motor vehicle unless it is supported by a "reasonable suspicion" of criminal activity. See, generally, *Terry v. Ohio* (1968), 392 U.S. 1, 19, 88 S.Ct. 1868, 1878–1879, 20 L.Ed.2d 889, 904–905; *State v. Andrews* (1991), 57 Ohio St.3d 86, 87, 565 N.E.2d 1271, 1273, at fn. 1. The "reasonable suspicion" standard states that, in order to justify an investigatory stop, a law enforcement officer must show that he was in possession of specific and articulable facts that, together with rational inferences therefrom, warrant the intrusion. See *State v. Bobo* (1988), 37 Ohio St.3d 177, 178, 524 N.E.2d 489, 490–491; see, also, *United States v. Quarles* (C.A.8, 1992), 955 F.2d 498, 501; *United States v. Villegas* (C.A.2, 1991), 928 F.2d 512, 516; *United States v. Hernandez–Alvarado* (C.A.9, 1989), 891 F.2d 1414, 1416. The stop must also be viewed in light of the totality of the surrounding circumstances presented to the officer at the time. See *United States v. Sokolow* (1989), 490 U.S. 1, 8, 109 S.Ct. 1581, 1585–1586, 104 L.Ed.2d 1, 10–11; see, also, *State v. Loza* (1994), 71 Ohio St.3d 61, 71, 641 N.E.2d 1082, 1097–1098; *State v. Freeman* (1980), 64 Ohio St.2d

291, 18 O.O.3d 472, 414 N.E.2d 1044, at paragraph one of the syllabus. After a thorough review of the transcript of the suppression hearing, we are unable to conclude that Trooper Fellure had a reasonable suspicion that appellant was engaging in criminal activity (*i.e.*, drunk driving) at the time of the stop.

The officer testified below that his sole reason for making the investigatory stop was that he had observed appellant's car drive over the right-hand edge line of the road on two occasions during the span of a mile. It was unclear, however, just how far over the edge line appellant's car had gone.[2] Moreover, Trooper Fellure testified that appellant never went left of center, was not speeding, and violated no other traffic laws. We find as a matter of law that these two instances of crossing the right-hand edge line of the road, without more, were insufficient to justify a stop of the vehicle.

These "weaving car" cases present a particularly thorny problem. Often, it is only the presence of one or two additional circumstances (beyond the weaving) that will separate a constitutional stop from one that is unconstitutional. For instance, in *State v. Gullett* (1992), 78 Ohio App.3d 138, 145, 604 N.E.2d 176, 180–181, this court held that two instances of crossing the right-hand edge line of the road, without more, were insufficient to warrant a stop of the vehicle. We have reached the same conclusion in other cases with similar facts, see, *e.g., State v. Williams* (1993), 86 Ohio App.3d 37, 619 N.E.2d 1141; *State v. Lynn* (Dec. 4, 1992), Hocking App. No. 92CA8, unreported, 1992 WL 368826, as have our colleagues in other appellate districts. See, *e.g., State v. Johnson* (1995), 105 Ohio App.3d 37, 663 N.E.2d 675; *Hamilton v. Lawson* (1994), 94 Ohio App.3d 462, 640 N.E.2d 1206; *Mason v. Loveless* (1993), 87 Ohio App.3d 264, 622 N.E.2d 6. This is not to suggest that weaving within a single lane of traffic will never justify a stop. See *Gullett, supra,* 78 Ohio App.3d at 145, 604 N.E.2d at 180–181 (Peter B. Abele, J., concurring). A car may go over the edge line by a wide margin, or for a long duration of time, and this could well be sufficient reason for law enforcement officers to stop the car. There may be other circumstances in addition to the weaving that would warrant such an intrusion. For instance, in *State v. Elder* (July 25, 1996), Ross App. No. 95CA2165, unreported, 1996 WL 422469, we held that Highway Patrol officers were justified in stopping a vehicle that had gone over the right edge line once and the centerline three times. The Montgomery County Court of Appeals ruled in *State v. Hiler* (1994), 96 Ohio App.3d 271, 274, 644 N.E.2d 1096, 1097–1098, that state troopers could stop a car that was weaving and appeared to have a discrepancy between the license plate

---

2. Appellant testified below that Trooper Fellure had told him that he had gone over the line by only a couple of inches. The officer testified that it was "probably" more than a few inches, but he could not give an exact amount.

and the type of vehicle to which it was registered. These are all circumstances that go above and beyond mere weaving within a lane.

Nothing of that sort is present in the cause *sub judice*. Trooper Fellure testified that appellant was not speeding, did not go left of center, and did not run the stop sign situated in the area he was driving. There was also no evidence adduced that he violated any other traffic law. Moreover, as in *Gullett*, 78 Ohio App.3d at 145, 604 N.E.2d at 180–181, the evidence below does not indicate whether appellant's crossing of the edge line was only momentary or how far the line was crossed. It was incumbent upon the state below to fully develop the evidence that would justify the stop. *Id.* We find that the state failed to carry that burden herein.

Appellee counterargues that the facts and circumstances of this case are identical to those in *State v. Farris* (Aug. 5, 1993), Lawrence App. No. 93CA15, unreported, 1993 WL 294013, wherein this court upheld the stop of a weaving motorist. We disagree. The driver in *Farris* was observed by state troopers "cross[ing] the left edge line by one foot, three times within one quarter mile." Appellant's weaving in the cause *sub judice* was less frequent and occurred over an area four times greater than the driver in *Farris*. Moreover, the evidence in that case revealed that the motorist crossed over the edge line by one foot. This is a fairly significant margin. By contrast, there was no clear evidence presented in this case at all with respect to how far over the edge line appellant had gone. The facts and circumstances at issue in the *Farris* case are clearly distinguishable from those here.

For these reasons, we find that the trial court erred in denying appellant's motion to suppress evidence. His assignment of error is therefore sustained, and the judgment of the trial court is reversed.

*Judgment reversed.*

HARSHA, J., concurs separately.

KLINE, J., concurs in judgment only.

HARSHA, Judge, concurring.

As the principal opinion points out, "weaving car" cases usually present difficult questions. This difficulty has been compounded by the Ohio Supreme Court's decision in *Dayton v. Erickson* (1996), 76 Ohio St.3d 3, 665 N.E.2d 1091, and the United States Supreme Court's decision in *Whren v. United States* (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89.[3] The significance of *Erickson* and

---

3. I realize that *Erickson* and *Whren* are "pretext" cases and that this case does not explicitly address that issue. I also realize that those cases deal with probable cause, rather than

*Whren* lies in their holding that even technical violations of the law provide a basis for seizures by law enforcement officials. In rejecting the "reasonable officer" approach, the United States Supreme Court discounts the argument that technical interpretation would allow law enforcement officials to stop every motorist. That court stated:

"Petitioners urge as an extraordinary factor in this case that the 'multitude of' applicable traffic and equipment regulations' is so large and so difficult to obey perfectly that virtually everyone is guilty of violation, permitting the police to single out almost whomever they wish for a stop. But we are aware of no principle that would allow us to decide at what point a code of law becomes so expensive and so commonly violated that infraction itself can no longer be the ordinary measure of the lawfulness of enforcement." 517 U.S. at 818, 116 S.Ct. at 1777, 135 L.Ed.2d at 101.

The implication of these decisions is that if a motorist is violating a traffic law, even in a minor aspect, *i.e.*, travelling fifty-eight m.p.h. in a fifty-five m.p.h. zone, an officer is justified in making the stop. One could plausibly argue that even the slightest crossing of the white "fog line" on a highway results in a technical violation of R.C. 4511.33, which states in part:

"Whenever any roadway has been divided into two or more clearly marked lanes for traffic, * * * the following rules apply:

"(A) A vehicle * * * shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or line until the driver has first ascertained that such movement can be made with safety."

Certainly, even a momentary "bobble" could give rise to a reasonable, articulable suspicion, if not probable cause, to believe R.C. 4511.33 had been violated in light of the holding and rationale in *Erickson* and *Whren*.

Nonetheless, I join Judge Stephenson in holding that the initial stop in this case does not satisfy the requirements of the Fourth Amendment jurisprudence as pronounced by *Terry v. Ohio* (1968), 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889; *Delaware v. Prouse* (1979), 440 U.S. 648, 663, 99 S.Ct. 1391, 1401, 59 L.Ed.2d 660, 673–674; and *State v. Gullett* (1992), 78 Ohio App.3d 138, 604 N.E.2d 176. See, also, *State v. Wilhelm* (Apr. 14, 1997), Butler App. No. CA96–12–272, unreported, 1997 WL 176146. I do so based largely upon the fact that the unrefuted evidence in the record establishes that the trooper followed the appellant so closely at times so as to induce the behavior that the state uses to justify the stop. See *id.*, at 5.

---

reasonable, articulable suspicion, but I do not believe that the distinction is significant. See *State v. Thompson* (Mar. 12, 1997), Athens App. No. 96CA1748, unreported, 1997 WL 120212.

The appellant testified that any slight weaving he might have done was caused by the trooper following him as closely as a couple of car lengths, backing off and then coming up behind him again repeatedly, prior to activating the patrol car's overhead lights. Appellant testified that he kept watching this vehicle in his rear-view mirror, and this distraction caused him to weave slightly. This line of testimony was unrefuted by the state, either in direct or cross-examination.

Thus, in light of the totality of the surrounding circumstances, I join the principal opinion's conclusion that the stop was unreasonable.