DECISION AND JUDGMENT ENTRY
Robert S. Goodin appeals from a judgment entered by the Athens County Court of Common Pleas, finding appellant guilty of carrying a concealed weapon in violation of R.C. 2929.11.
Appellant raises the following assignments of error:
 I. THE TRIAL COURT ERRED IN FINDING THAT THERE WAS REASONABLE ARTICULABLE SUSPICION TO STOP THE DEFENDANT'S VEHICLE.
 II. THE TRIAL COURT ERRED IN FINDING THE INVENTORY SEARCH TO BE CONSTITUTIONAL.
Having fully considered these assignments of error, we affirm the judgment of the trial court.
 I.
Shortly after midnight, Nelsonville police officer Tom McKnight stopped appellant for weaving outside his lane of travel on State Route 33 (Canal Street) within the City of Nelsonville. Appellant's Chevrolet Blazer crossed the center line three times within a three-quarter mile span. The initial two crossings were insubstantial and purportedly undertaken to avoid pot holes in the road. Aware of the rough road conditions, Officer McKnight stated that he gave appellant the benefit of the doubt as to the first two line crossings and did not pull him over at that time. However, when Officer McKnight observed appellant cross a clearly marked centerline by half a car width under smooth road conditions, Officer McKnight conducted a traffic stop.
The investigatory stop occurred several feet off the roadway in a vacant, privately-owned parking lot. Officer McKnight approached the driver's side door of appellant's vehicle. When he began conversing with appellant, Officer McKnight smelled a strong odor of alcohol on appellant's person, noticed appellant's eyes were bloodshot and obtained appellant's admission that he'd consumed a few drinks.
Officer McKnight conducted three field sobriety tests with appellant: (1) the horizontal gaze nystagmus (HGN) test, (2) the one-leg stand, and (3) the walk-and-turn. Appellant failed each test and Officer McKnight subsequently arrested appellant for driving under the influence and placed him in the back seat of the police cruiser.
Officer McKnight then radioed for a tow truck for purposes of impounding appellant's vehicle. Appellant, who was the vehicle's sole occupant, requested that his wife be called to make other arrangements to remove the vehicle. Officer McKnight refused and proceeded to inventory the vehicle's contents. During this process, Officer McKnight opened an unlocked, closed console between the front seats and discovered the handgun which formed the basis of the weapons charge. Officer McKnight did not have a warrant to search appellant's vehicle.
Following his indictment, appellant filed a motion to suppress evidence. After an evidentiary hearing and submission of post-hearing memoranda, the trial court issued a decision and journal entry finding that both the investigatory stop and the inventory search of appellant's vehicle were lawful. Appellant entered a plea of no contest to the charge of carrying a concealed weapon and was sentenced to up to five years of community control and fined $1,000. He filed a timely appeal.
 II.
In his first assignment of error, appellant contends that the trial court erred in refusing to suppress the evidence obtained by Officer McKnight because the officer lacked reasonable articulable suspicion to stop appellant's vehicle.
In a motion to suppress, the trial court assumes the role of trier of fact and, as such, is in the best position to resolve questions of fact and to evaluate witness credibility. See, e.g.,State v. Mills (1992), 62 Ohio St.3d 357, 366, citing State v. Fanning (1982), 1 Ohio St.3d 19, 20; see, also, State v. Williams
(1993), 86 Ohio App.3d 37, 41. Accordingly, in our review we are bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Fausnaugh
(Apr. 30, 1992), Ross App. No. 1778, unreported. Accepting those facts as true, we must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the applicable legal standard. Williams, supra;Fausnaugh, supra.
The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to stop an individual if the officer has a reasonable suspicion, based on specific and articulable facts, that criminal behavior has occurred or is imminent. Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889; State v. Andrews (1991), 57 Ohio St.3d 86. To justify an investigatory stop, a police officer must be able to articulate specific facts which would warrant a person "of reasonable caution" in the belief that the person stopped has committed or is committing a crime. Terry, 392 U.S. at 19-20,88 S.Ct. at 1878-1879, 20 L.Ed.2d at 904-905.
The officer testified that he began following appellant because appellant appeared to be speeding, though Officer McKnight did not have his radar on and could not be certain. Officer McKnight followed appellant for approximately three-quarters of a mile and observed appellant's vehicle travel left of center on three separate occasions. Officer McKnight did not stop appellant after the first two line crossings because the area was filled with pot holes and Officer McKnight felt there may have been a reasonable explanation for appellant's actions.
The trial court found that Officer McKnight was justified in stopping appellant after he veered left of center on the third occasion. Officer McKnight testified that the area in which appellant was traveling was smooth and there was a slight turn but no need to avoid any pot holes or other obstacles. Further, appellant's car crossed the center line by a significant amount, one half of a car width.
Appellant argues that traveling left of center does not justify a traffic stop in all cases, especially absent testimony regarding the length of time appellant's vehicle was left of center. In support of his argument, appellant cites several cases from this jurisdiction in which we found that a "weaving car" alone was insufficient to support a traffic stop. See, e.g.,State v. Brite (1997), 120 Ohio App.3d 517 (finding that driving over the right-hand edge line of the road on two occasions during the span of one mile is insufficient to justify a stop absent testimony regarding how far over the edge line appellant's car had gone); State v. Williams (1993), 86 Ohio App.3d 37 (holding that vehicle moving one tire width out of its lane of travel did not constitute reasonable suspicion justifying a stop); State v.Gullett (1992), 78 Ohio App.3d 138, 145 (holding that two instances of crossing the right-hand edge line of the road, without a more specific description, was insufficient to warrant a stop of the vehicle).
In Brite, this Court discussed the dilemma of "weaving car" traffic stops and stated:
 Often, it is only the presence of one or two additional circumstances (beyond the weaving) which will separate a constitutional stop from one that is unconstitutional. * * * A car may go over the edge line by a wide margin, or for a long duration of time, and this could well be sufficient reason for law enforcement officers to stop the car. There may also be other circumstances in addition to the weaving which would warrant such an intrusion.
Brite, supra, at 521.
It is important to note that Brite and Gullett were in large part based upon the lack of detail in the officer's testimony. Here, the officer was more specific in his description. Our review of the totality of the circumstances in the case at bar indicates that Officer McKnight had reasonable suspicion which justified his initial stop of appellant. Even without considering the first two instances during which appellant traveled left of center, there was sufficient reason for the officer to conduct an investigative stop. The record supports the trial court's finding that appellant traveled over the center line by "a fairly significant margin" of half a car-width; this wide margin alone constituted reasonable grounds. While testimony regarding the length of time appellant's car remained over the center line would have been relevant, such testimony was not necessary to justify the officer's stop of appellant.
We find that appellant's first assignment of error is merit less
 III.
In his second assignment of error, appellant asserts that the trial court erred in finding the inventory search of appellant's vehicle to be constitutional. Specifically, appellant argues that his vehicle was not lawfully impounded, that the search occurred prior to the impoundment, that appellant asked that other arrangements be made for the safekeeping of the vehicle, that Officer McKnight did not follow standard police procedure and that the inventory was a pretext to conceal an investigatory search.
An inventory search of a lawfully impounded vehicle is a well-defined exception to the warrant requirement of theFourth Amendment to the United States Constitution. Colorado v. Bertine
(1987), 479 U.S. 367, 371, 93 L.Ed.2d 739, 107 S.Ct. 738; SouthDakota v. Opperman (1976), 428 U.S. 364, 367, 49 L.Ed.2d 1000,96 S.Ct. 3092. The exception derives from the three-fold purpose of protecting the owner's property while in police custody, protecting the police from claims over lost or stolen property, and protecting the police from potential danger. Opperman,428 U.S. at 369. In order to be valid, however, the search must be conducted in accordance with standard police procedure and not as a subterfuge for an evidentiary search. Id. at 376.
While both State v. Robinson (1979), 58 Ohio St.2d 478, andOpperman, supra, make it clear that the validity of an inventory search is dependent upon the lawfulness of the initial impoundment, neither court specified the conditions under which an automobile may be lawfully impounded. In Colorado v. Bertine,supra, however, the United States Supreme Court gave blanket approval to routine impoundments if authorized by standardized police procedures.
Here, the state introduced evidence regarding the Nelsonville Police Department's impoundment/inventory policy. The policy authorizes impoundment of vehicles when, among other things, (1) "any vehicle has been used in or connected with the commission of a criminal act and is located upon either public or private property," or (2) "any vehicle is left unattended either on public or private property due to the removal of an ill, injured or arrested person." The impoundment of a vehicle is reasonable when the driver/sole occupant is arrested. See Katz (1999), Ohio Arrest, Search Seizure 236-237, Section 12.10.
Appellant argues that the state did not prove that this policy was in effect at the time of appellant's arrest. However, the trial court found that this policy was in effect and we believe the evidence supports this finding. Officer McKnight testified that he was instructed about this policy when he joined the force, that police officers are informed when such policies change and that he had not received notice prior to arresting appellant that the policy had been modified.
The trial court found that Officer McKnight had a reasonable basis for not leaving appellant's vehicle unattended during the early morning hours in a vacant parking lot near a heavily-traveled road. Furthermore, Officer McKnight testified that he noticed several expensive-looking personal items in plain view within appellant's vehicle. As the impoundment of appellant's vehicle was authorized by police policy and Officer McKnight had a good faith basis to do so, the evidence supports the trial court's conclusion that appellant's vehicle was lawfully impounded.
In his second argument, appellant contends that the inventory search was unlawful as it was not conducted after the vehicle was impounded as required in Opperman, supra. Preliminarily, we note that all the Opperman factors need not be met in order for an inventory search to be lawful. Rather, Opperman requires that the court examine the totality of the circumstances in each case to ensure that the search was reasonable and not for investigatory purposes. Id. at 375. Furthermore, as the Supreme Court of Ohio noted in State v. Peagler (1996), 76 Ohio St.3d 496, 502, an inventory search that is conducted prior to impoundment is not automatically unreasonable and unconstitutional. Protection of the property owner from loss and protection of the police from false claims are both often better served by an early inventory before the vehicle is moved. Katz, supra.
Similarly, while Officer McKnight could have released the vehicle to appellant's wife, he was not required to do so. Even when a less intrusive means is available to protect a vehicle, the police are not required to utilize the alternative method. See Bertine, supra, 479 U.S. at 374; State v. Smith (Nov. 14, 1997), Montgomery App. No. 16262, unreported. Furthermore, as appellant's wife was not at the scene, Officer McKnight would have been forced to choose between leaving appellant's vehicle unattended until appellant's wife arrived or waiting at the scene until she arrived, assuming she was reachable and willing to retrieve the vehicle in the early morning hours.
Appellant further submits that Officer McKnight failed to comply with police policy regarding inventory searches and, therefore, the search was unconstitutional. The policy states that "when any vehicle is impounded * * *, the impounding officer will complete an impound form * * *." Appellant contends that the policy was not followed because Officer McKnight inventoried the vehicle prior to its impoundment. We disagree with appellant's reading of the policy as it does not specifically require that the officer conduct the search after the impoundment.
We do, however, agree that Officer McKnight failed to strictly comply with the portion of the policy stating that "all vehicles that are impounded will be completely inventoried if at all possible and all items in the vehicle will be listed on the impound form. Inventories will include closed and/or locked areas of the vehicle if at all possible." Officer McKnight admitted he did not inventory the area of the vehicle behind the rear passenger seats even though it was readily accessible to him. Officer McKnight also failed to locate and inventory several dollars in loose change in a pouch on the driver's side door. Officer McKnight testified that he was mainly concerned with the areas that a thief might easily observe and reach.
We agree with the trial court, however, that Officer McKnight substantially complied with standard police procedures in conducting the inventory. He filled out a "Vehicle Inventory/Custody Report" and listed approximately fourteen items located in the front and rear passenger seats. Therefore, we agree with the trial court that Officer McKnight's failure to strictly comply with the policies regarding inventory searches does not in itself invalidate the inventory search of appellant's automobile. However, an officer's failure to inventory the entire vehicle may, in some instances, be evidence of a pretextual motive for the search.
Lastly, appellant argues that the inventory search was a pretext to conduct an investigatory search. We agree with the trial court's conclusion that no pretext existed. Although Officer McKnight received information that appellant had been involved in a disturbance at a local tavern, Officer McKnight testified that this was not the basis for the stop and that he did not receive this information until after he had begun following appellant's vehicle. Officer McKnight also inventoried a number of non-criminal items and continued the inventory after locating the weapon. Further, Officer McKnight explained why he did not inventory the "trunk" area of appellant's vehicle. In sum, we agree that the evidence supports the trial court's finding that the inventory of appellant's vehicle was not a pretext for an investigatory search.
Therefore, appellant's second assignment of error is overruled. Finding no error, we sustain the judgment of the common pleas court of Athens County.
JUDGMENT AFFIRMED
 JUDGMENT ENTRY
It is ordered that the JUDGMENT BE AFFIRMED and that the Appellee recover of Appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Athens County Common Pleas Court to carry this judgment into execution.
IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted. The purpose of a continued stay is to allow Appellant to file with the Ohio Supreme Court an application for a stay during the pendency of proceedings in that court. If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Ohio Supreme Court in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Evans, J.: Concur in Judgment and Opinion.
For the Court
 BY: _________________________ WILLIAM H. HARSHA, Judge
 NOTICE TO COUNSEL Pursuant to Local Rule No. 14, this document constitutes afinal judgment entry and the time period for further appealcommences from the date of filing with the clerk.