OPINION
Donald Philipot appeals from the judgment of the Kettering Municipal Court denying his motion to suppress evidence acquired as a result of a traffic stop.
On April 10, 1999, Philipot was stopped and subsequently arrested for driving under the influence of alcohol, in violation of R.C. 4511.19. He was also cited for continuous lanes violation, in violation of Kettering City Ordinance 432.08, and for failure to wear a safety belt in violation of R.C. 4513.263. Philipot entered not guilty pleas on all of the charges. He filed a motion to suppress, arguing that the traffic stop was unconstitutional. A suppression hearing was held on June 16, 1999, during which the following evidence was adduced.
City of Kettering Patrolman Roger Smart testified that at 2:05 a.m. on April 10, 1999, he was patrolling West Stroop Road, having just crossed Far Hills Ave., when he noticed a gold Oldsmobile driving erratically in front of him. Between Far Hills Ave. and Overland Trail, the Oldsmobile, driven by Philipot, crossed the left-hand dotted white line three times. Each time, both left wheels crossed over into the other lane by a distance of approximately one foot. At the stop light at Southern Blvd., the Oldsmobile stopped at least two car lengths behind the stop bar. Ptl. Smart noted that the Oldsmobile had continuously weaved back and forth within its lane from the time he had first observed the vehicle, until the time the vehicle had reached Southern Blvd. For safety reasons, Ptl. Smart waited to effect the stop until the light at Southern Blvd. had turned green and both cars had cleared the intersection.
Upon stopping the vehicle, Ptl. Smart exited his cruiser and approached the Oldsmobile. He could immediately detect an odor of alcohol on Philipot. Ptl. Smart also noticed that Philipot's speech was slurred and "thick-tongued." Suspecting that Philipot was under the influence of alcoholic beverages, he asked Philipot if he had had anything to drink. Philipot stated that he had attended a dinner party, and had had two drinks prior to dinner.
Based upon his suspicions, Ptl. Smart performed a partial field sobriety test on Philipot. Philipot failed the partial horizontal gaze nystagmus test which Ptl. Smart performed upon Philipot's left eye. Ptl. Smart ordered Philipot out of his car to administer other field sobriety tests. Philipot stepped "very unsteadily" from his car and almost walked out into traffic. Ptl. Smart testified that after redirecting Philipot onto the sidewalk, he performed a full horizontal gaze nystagmus test, the results of which indicated to Ptl. Smart that Philipot had at least a 0.10 blood alcohol level.
Ptl. Smart next requested that Philipot perform the walk and turn test. He asked Philipot if he had any physical problems with his legs, and Philipot responded that he had injured his calf twenty years ago. According to Ptl. Smart, Philipot bent down to show the injury to Ptl. Smart and almost fell over. Philipot then refused to complete the test. Thereafter, Ptl. Smart asked Philipot to recite the letters of the alphabet from "D" to "K." Despite Philipot's response that he did not know his alphabet, he completed that test successfully. Ptl. Smart then asked Philipot to count backward from 67 to 53, which he was unable to do. At that point, Ptl. Smart arrested Philipot for driving under the influence, and cited him for the lanes violation and for not wearing his seat belt. Philipot refused to submit to a chemical test to determine his blood alcohol level.
Joanne Rogers, the passenger in Philipot's car, admitted at trial that she had been intoxicated the evening of April 10, 1999. According to Rogers, Ptl. Smart had followed Philipot's car somewhat closely, but she did not remember Philipot crossing the lane markers or weaving within his lane.
Philipot testified on his own behalf, steadfastly denying that he had crossed the lane markers. He stated that he had been very careful to not violate any traffic rules, because he had been aware that an officer had been following his car very closely. Philipot testified that he had not weaved within his lane, although he stated that he could have weaved "very slight" within his lane towards Southern Blvd., because he was intently concentrating to maintain the speed limit as he drove down the hill. On cross-examination, Philipot admitted that he had had a glass of wine before dinner, part of a glass of wine with dinner, and an Absolut vodka with water after dinner.
At the close of the suppression hearing, the trial court found that the traffic stop was justified because Ptl. Smart had possessed reasonable, articulable suspicion that Philipot had violated traffic laws. Furthermore, the trial court noted that Ptl. Smart had had probable cause to arrest Philipot for driving under the influence of alcohol based upon evidence he had discovered from the traffic stop.
On July 22, 1999, Philipot entered a no contest plea to the driving under the influence charge, the seat belt violation and the lane violation. The trial court sentenced Philipot to a $1,000 fine, license suspension for one year from April 10, 1999, and 180 days in jail on the driving under the influence conviction. The jail sentence was suspended pending Philipot's successful completion of a "weekend program." Furthermore, Philipot was given a $25 fine and court costs for each of the remaining citations.
Philipot now appeals the trial court's denial of his motion to suppress, asserting one assignment of error:
 The trial court erred in failing to sustain the suppression motion because the State failed to prove that the officer stopped the car based on a reasonable suspicion that the driver had committed a traffic offense.
Philipot argues that there was no reasonable, articulable suspicion for Ptl. Smart to effect a traffic stop, because crossing the marked line does not necessarily justify a traffic stop. Philipot contends that because the violation happened at night, when there was no other traffic on the road, the State had not met its burden to demonstrate how Philipot's "minor" line crossing of "only * * * a foot at most" was unsafe or "unpracticable." We do not agree.
When considering the denial of a motion to suppress, we note that the trial court is the primary judge of the credibility of witnesses and the weight of the evidence. State v. Fanning
(1982), 1 Ohio St.3d 19, 20. We must accept the trial court's findings if they are supported by competent and credible evidence.State v. Williams (1993), 86 Ohio App.3d 37, 41.
In this case, we must consider whether Ptl. Smart had a reasonable suspicion, based on specific and articulable facts, that Philipot was or recently had been engaging in criminal behavior. See Terry v. Ohio (1968), 392 U.S. 1, 21. A traffic stop is legitimate if the officer possessed specific and articulable facts that a driver had committed or may be committing a criminal act, which includes the violation of a traffic law.State v. Cross (May 14, 1999), Montgomery App. No. 17316, unreported. The Ohio Supreme Court determined that a traffic stop is constitutional where an officer has reasonable articulable suspicion that any criminal violation had occurred, "including a minor traffic violation," even if the stop was pretextual. SeeDayton v. Erickson (1996), 76 Ohio St.3d 3, 11-12. See, also,Whren v. United States (1996), 517 U.S. 806.
In his argument, however, Philipot relies on State v. Brite
(1997), 120 Ohio App.3d 517, for support that weaving does not always justify a stop. In Brite, the officer testified that the sole reason he had stopped the defendant was because he had observed the defendant's vehicle cross over the right-hand edge line twice during the span of a mile. In its decision, the court noted the difficulties in "weaving car" cases, and stated that "the presence of one or two additional circumstances (beyond the weaving)" will be the factor that determines if a case is constitutional or unconstitutional. Id. at 522-523. The Brite
court cited State v. Gullet (1992), 78 Ohio App.3d 138, and Statev. Johnson (1995), 105 Ohio App.3d 57, cases upon which Philipot relies, as further support for the unreasonableness of the search. The court, however, also stated that under certain circumstances, weaving could be sufficient reason for a stop, or other circumstances could be present to warrant the stop.
This court has held that the theories underlying Brite,Johnson and Gullet are of limited precedential value in view ofWhren, supra, and Dayton v. Erickson, supra. State v. Spillers
(Mar. 24, 2000), Darke App. No. 1504, unreported; State v. Ward
(Mar. 12, 1999), Darke App. No. 1472, unreported. We have found that Whren and Erickson stand for the premise that "a police officer in a marked cruiser may stop a vehicle for any traffic violation, no matter how slight, for the purpose of issuing a citation for the violation." Spillers, supra, citing State v.Stephens (May 22, 1998), Montgomery App. No. 16727, unreported.
In this case, Ptl. Smart testified that he had directed Philipot to stop at the side of the road after observing Phillipot's erratic driving. Philipot was subsequently charged with violating Kettering City Ordinance 432.08, the equivalent to R.C. 4511.33(A), which states that a person must drive a vehicle within a single lane and not move from that lane until the driver has ascertained that the movement can be accomplished safely. Consequently, we conclude that Ptl. Smart's observations of Philipot traveling over the left-hand marked line three times, at a distance of approximately one foot, and Philipot's continuous weaving within the lane, did constitute reasonable articulable suspicion of criminal activity to stop Philipot's vehicle.
Incidentally, we find this case to be distinguishable fromBrite, Johnson and Gullet, because Philipot went left into the other lane of traffic, rather than right into the berm of the road. Additionally, we agree with the court in State v. Overholt
(Apr. 12, 2000), Medina App. No. 2980-M, unreported, which considered a traffic stop based upon a police officer's observation of the defendant's vehicle "traveling eight to ten inches over the centerline and his constant swaying for over one mile." The Overholt court found that the defendant's weaving was a "substantial impairment" which constituted reasonable articulable suspicion to justify the traffic stop. Id.
Accordingly, Philipot's traffic stop was not improper, thus the trial court did not err in denying his motion to suppress. Philipot's assignment of error is overruled.
The trial court's judgment is affirmed.
 ____________________________ FREDERICK N. YOUNG, J.
GRADY, P.J. and BROGAN, J., concur.