OPINION
Appellant Tiffany N. Thorn appeals a judgment of the Canton Municipal Court convicting her of driving with a prohibited blood alcohol content (R.C. 4511.19(A)(3)), and a marked lanes violation (R.C. 4511.33(A)), upon a plea of no contest:
 ASSIGNMENTS OF ERROR FIRST ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN NOT GRANTING APPELLANT'S MOTION TO SUPPRESS WHERE THE ARRESTING OFFICER ALLEGEDLY OBSERVED A DE MINIMIS TRAFFIC VIOLATION, AFTER FOLLOWING CLOSE BEHIND DEFENDANT FOR SEVERAL MILES BUT IGNORED THAT ALLEGED VIOLATION, AND INSTEAD CHOSE TO FOLLOW APPELLANT AGAIN SEVERAL MORE MILES IN THE HOPES OF VIDEOTAPING A MORE SERIOUS INFRACTION, AND AFTER MORE THAN SIX (6) MILES, HAVING OBSERVED NO VIOLATIONS, THE EARLIER DE MINIMIS VIOLATION NO LONGER PROVIDED A REASONABLE ARTICLULABLE SUSPICION OF IMPAIRED DRIVING JUSTIFYING A TRAFFIC STOP OF APPELLANT.
 SECOND ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S SUPPRESSION MOTION WHERE THE EVIDENCE PRESENTED AT THE HEARING DEMONSTRATED THAT THE ARRESTING OFFICER FOLLOWED CLOSELY BEHIND APPELLANT'S VEHICLE, FOR AN UNREASONABLY LONG PERIOD OF TIME, WHILE APPELLANT WAS NOT COMMITTING ANY TRAFFIC VIOLATION, AND THIS UNJUSTIFIED POLICE PURSUIT WAS SO INTIMIDATING AND DISTRACTING THAT, IF APPELLANT DID COMMIT A TRAFFIC INFRACTION, SAID INFRACTION WAS PROVOKED OR CREATED BY THE UNJUSTIFIED AND UNREASONABLE BEHAVIOR OF THE ARRESTING OFFICER, AND BUT FOR THE OFFICER'S INTIMIDATION, APPELLANT WOULD NOT HAVE COMMITTED THE ALLEGED TRAFFIC VIOLATION.
 THIRD ASSIGNMENT OF ERROR THE TRIAL COURT ERRED IN OVERRULING A MOTION TO SUPPRESS FIELD SOBRIETY TEST (FST) RESULTS, AND THE B.A.C. VERIFIER MACHINE TEST RESULTS THAT FOLLOWED THE APPELLANT'S ARREST FOR DUI, WHERE THE TESTING OFFICER ADMINISTERED THE PHYSICAL PERFORMANCE TESTS BY MAKING THE FEMALE APPELLANT DRIVER PERFORM THE WALK AND TURN, HAND TO TOE, AND OTHER AMBULATORY TESTS IN HER BARE FEET, ON AN OPEN PARKING LOT NEXT TO A BUSY STREET, WHERE SHARDS OF GLASS AND STREWN STONES CAN BE SEEN REFLECTING IN THE VIDEOCAMERA LIGHT THEREBY FAILING TO OBSERVE ANY KNOWN GUIDELINES FOR FOR [SIC] SAID PERFORMANCE FIELD SOBRIETY TESTING.
On June 1, 2000, at approximately 2:30 a.m., Trooper Carlos Smith of the Ohio State Highway Patrol was on routine patrol, in uniform, in a marked cruiser. He noticed appellant's vehicle on Dressler Road, where her car was stopped in the middle of the road. He turned around, and began to follow appellant's vehicle. He caught up to the vehicle at the intersection of Whipple and I-77, and followed the vehicle on to I-77 at mile post 109. He noticed appellant's passenger side tires went completely over the white line, and stayed on the right-hand line for approximately one-half mile. He followed her to the exit for Route 62, and at this point, activated the video camera in the cruiser.
The video shows that appellant's tires strike the white center line several times, and also strike the right-fog line. The video further shows that the vehicle veers toward the cement barricade on the exit ramp.
As appellant began to exit on Market Street, Trooper Smith activated his overhead lights to effectuate a stop. Appellant pulled into a church parking lot on Market Street.
Trooper Smith approached appellant's vehicle and asked her if she knew why he was pulling her over. She stated that she was not speeding. He told her that she had driven over the white line. She told him that she did not want to argue with him. She stated that she was not drunk. She also stated that she drank three or four beers that evening. She explained to him that she was having a rough time, informing him that she had stitches on her wrists from a suicide attempt. During the course of the stop, she also told him that she had a brain tumor, her mother had cancer, and her husband had tried to strangle her.
Trooper Smith asked her to step out of the vehicle to perform a series of field sobriety tests. He noticed that she was not wearing shoes, and asked her if she would be more comfortable with her shoes on. She stated that she had taken her shoes off because her toes hurt. Several times he asked her if she would be more comfortable with her shoes on, and she consistently responded that she was fine in her bare feet. Appellant first was asked to perform the horizontal gaze nystagmus test. She exhibited six out of six clues. She was then asked to perform the one-leg stand test. She lost her balance several times, raising her arms in an attempt to maintain her balance. While she initially began counting, "1-1000, 2-1000 . . .," as instructed by the officer, after losing her balance, she began counting, "21, 22 . . ." Finally, Trooper Smith asked her to perform the heel-to-toe test. She had difficulty touching her heel to her toe.
Based on her performance on the field sobriety tests, combined with a strong odor of alcohol and her admission to having several drinks, appellant was taken to the North Canton Police Department, where she submitted to a breathalyzer test. Her breath alcohol content registered .148.
Appellant was charged with driving under the influence of alcohol and failing to travel in marked lanes. She filed a motion to suppress, claiming the trooper lacked a reasonable suspicion of criminal activity to justify stopping the vehicle.
At the suppression hearing, appellant testified that she saw Trooper Smith sitting in the Holiday Inn parking lot when she came out of The Pub on Dressler Road. She noticed him following her, but testified that she had no fear of him driving behind her. She claimed that during the stop, she was crying, as she was having an anxiety attack, which is not apparent on the tape. She also testified that she stepped on glass while performing the field sobriety tests in her bare feet, which is not apparent from the tape. She testified that she had taken Xanax and Lurox on the day in question. She stated that she worked at Gatsby's Pub, and the girls from work had taken her out that night to make her feel better, due to the difficulties in her life. She claimed that the officer asked her if she wanted to go to a hotel or had somewhere to go, and eventually dropped her off at a friend's house. She claimed that she told the officer she had to break a window to get into the home, and claims Trooper Smith said he would pretend that he did not hear this. She also claimed that he said, "Hopefully I see you under different circumstances." While appellant states in her brief that the trooper did not deny asking her to go to a hotel or watching her break into the house, it is apparent from the record that the trooper was not given the opportunity to deny her story, as he was never questioned concerning these events.
Following the suppression hearing, the court specifically found the trooper's testimony to be credible. Based on his testimony of her driving prior to turning on the tape, and the evidence of weaving on the tape, the court found the trooper had a reasonable suspicion of criminal activity to justify the stop. Based on her performance on the field sobriety tests, and her admission to consuming beer, the court found there was probable cause for her arrest.
 I
Appellant argues that the trooper did not have a reasonable articulable suspicion of criminal activity to justify stopping her car, based on a deminimis traffic violation.
The trooper testified that he first observed appellant's vehicle stopped in the middle of Dressler Road. When he began to follow the vehicle, he observed her drive with her right passenger tires over the white fog line for approximately a half mile. At that point, he turned on the video. The video reveals appellant's vehicle weaving in its own lane, several times striking the right fog line, and several times striking the center line dividing the two lanes of her side of the highway. Further, appellant's car swerved toward the barricade while exiting the highway. The court did not err in finding the officer had a reasonable suspicion of criminal activity to justify stopping the vehicle.
The first assignment of error is overruled.
 II
Appellant argues that the court erred in overruling her motion to suppress, as the officer's presence behind the vehicle was so intimidating that any violations which occurred were a direct result of his presence behind her vehicle. Appellant relies on State v. Brite
(1997), 120 Ohio App.3d 517.
The language relied on by appellant in Brite appeared in the concurring opinion, where Judge Harsha noted that the appellant had testified that any slight weaving was caused by the trooper following him closely, backing off, and then coming up behind him repeatedly. The appellant inBrite testified that he kept watching the vehicle in his rearview mirror, and this distraction caused him to weave slightly. This testimony was unrefuted by the state. Id. at 523-524.
In contrast, in the instant case, appellant testified, "I knew he was behind me. I had no fear whatsoever of him being behind me." Tr. 39. The record in the instant case does not demonstrate that the presence of the trooper behind her caused her erratic driving. Further, from the video tape, it is apparent that the trooper kept a reasonable distance between his vehicle and that of appellant.
The second assignment of error is overruled.
 III
Appellant argues that the court erred in overruling her motion to suppress, where the officer forced her to perform field sobriety tests in her bare feet, on shards of glass.
Trooper Smith testified at the hearing that the test subject does not have to wear shoes when performing the test; the suspect has the option of taking them off or putting them on, whichever they feel more comfortable doing. Tr. 35. The trooper testified that he saw no loose gravel or glass. Tr. 11. Appellant told him that she was barefoot because the high heels she had been wearing hurt her feet. He asked her several times if she was fine without her shoes, or would be more comfortable putting her shoes back on. She consistently responded that she was fine without her shoes on. While appellant testified at the hearing that she cut her foot on a piece of glass, the video does not support this claim. At no point during the field sobriety test does she state she has cut her foot, nor does she react in a manner which would suggest that she had stepped on something sharp.
In addition, the facts known to the officer, excluding the heel-to-toe test and the one-leg stand test, provide probable cause for her arrest. He had observed erratic driving by appellant. Upon stopping the vehicle, he observed that her speech was slurred and her breath smelled of alcohol. She admitted that she had just left a bar, and had consumed three to four alcoholic beverage. Finally, she scored six out of six clues in the horizontal gaze nystagmus test.
The third assignment of error is overruled.
The judgment of the Canton Municipal Court is affirmed.
 JUDGMENT ENTRY
For the reasons stated in the Memorandum-Opinion on file, The judgment of the Canton Municipal Court is affirmed. Costs to appellant.
Gwin, P.J.
Edwards, J., and Farmer, J., concur