OPINION
In this case, Defendant, Simon Weierman, appeals from a conviction for driving under the influence of alcohol (DUI) and driving left of center. After a motion to suppress was overruled, Defendant pled no contest to the charges and was found guilty. He was then sentenced to a $1,000 fine, with $650 suspended, and 180 days in jail, with all but six days suspended. A timely appeal followed.
In support of the appeal, Defendant presents the following assignments of error:
I. The trial court erred in failing to sustain the suppression motion because the State failed to prove that the officer stopped the car based on a reasonable suspicion that the driver had committed a traffic offense.
II. The trial court erred when it refused to suppress the evidence because the State failed to meet its burden of proving that the officer had probable cause to believe that appellant was driving under the influence.
After considering the record and applicable law, we find the assignments of error without merit. Accordingly, the judgment of the trial court will be affirmed.
 I
Before we address the first assignment of error, some preliminary comments are in order. First, we note that the State failed to file a brief in this matter. Under App.R. 18(C), if an appellee fails to file a brief, "the court may accept the appellant's statement of the facts and issues as correct and reverse the judgment if appellant's brief reasonably appears to sustain such action." Unfortunately, these sanctions have little practical effect in the present case, since we have been unable to find a reasonable basis for reversing the judgment. Nonetheless, we must stress that we disapprove of the State's failure to file a brief. We are also disturbed by the State's failure to adequately respond to our show cause order. Specifically, we issued a show cause order on September 27, 2001 directed to the State. Instead of filing a brief, the State filed a motion to dismiss the appeal. Apparently, the State mistakenly felt that Defendant was the recipient of the show cause order, when the State, in fact, was the subject of the order. Accordingly, the State's motion to dismiss will be overruled.
As a further matter, our review of the record reveals several procedural defects in the trial court proceedings. Although Defendant failed to object below or to raise these defects on appeal, at least one issue is potentially jurisdictional. Consequently, we may raise the matter on our own motion. See Haskins v. Haskins (1995),104 Ohio App.3d 58, 60, and Seo v. Austintown Twp. (1998),131 Ohio App.3d 521, 523.
The most glaring defect is the trial court's failure to adopt the magistrate's decision. According to the record, Defendant filed a motion to suppress on January 10, 2001. After hearing evidence, the magistrate filed a decision on March 16, 2001, overruling the motion. Subsequently, on March 29, 2001 (thirteen days later), Defendant pled no contest to the charges, was found guilty, and was sentenced by the trial court. However, the record is devoid of any indication that the trial court ever adopted the magistrate's decision before accepting the plea. The plea was also accepted even before the time for filing objections to the magistrate's decision had expired. See Crim. R. 19(E)(2)(a).
Effective July 1, 2000, Crim R. 19 was substantially amended to include procedures patterned after Civ.R. 53. Before the amendments, magistrates did not even have authority to preside over motions to suppress. Statev. Smith (1996), 112 Ohio App.3d 413, 416, and State v. Chagaris
(1995), 107 Ohio App.3d 551, 556. Although magistrates have somewhat expanded powers under the amended rule, and may now hear suppression motions upon proper referral, their ability to enter orders without judicial approval is still significantly restricted by Crim. R. 19(C)(5).
Under Crim. R. 19(C)(5), magistrates may only enter pretrial orders that are necessary to regulate the proceedings and that are not dispositive of a claim or defense. An example of such an order is a temporary ruling on a motion to amend a complaint under Crim. R. 7 or a ruling on a discovery motion. See Staff Notes to Crim. R. 19(C)(5). In contrast, a ruling on a suppression motion is clearly dispositive, since it can potentially destroy the State's case, if it is granted.107 Ohio App.3d at 556. As a result, even under the amended rule, a magistrate cannot enter an order on a suppression motion without judicial approval. Instead, if a case is first properly referred, the magistrate must file a decision, which is then subject to judicial approval.
In this regard, Crim. R. 19(E)(1) provides that magistrates must file written decisions in all referred matters. The parties then have fourteen days to file objections to the decision. See Crim. R. 19(E)(2)(a). According to Crim. R. 19(E)(3)(a):
 [t]he magistrate's decision shall become effective when adopted by the court. The court may adopt the magistrate's decision and enter judgment if no written objections are filed or the parties have waived the filing of objections in writing or on the record in open court, unless the court determines that there is an error of law or other defect on the face of the magistrate's decision.
As we mentioned, the trial court in this case erroneously acted before the time for filing objections had expired. The record also does not contain any waiver of objections in writing or on the record in open court. And finally, the magistrate's decision never became effective because the trial court did not adopt it. The issue thus becomes whether these defects deprive us of jurisdiction.
Previously, we have held that a final, appealable order does not exist where the trial court simply overrules objections to the magistrate's report and does not adopt the magistrate's decision. In the Matter ofBarton (Apr. 18, 1997), Miami App. No. 96-CA-31, unreported, 1997 WL 189474, p. 3. Specifically, the absence of a final, appealable order deprives us of jurisdiction over the appeal. Id.
However, upon consideration, we think Barton is distinguishable. InBarton, the judge simply overruled objections to the magistrate's report and did not enter judgment or adopt the report. In contrast, the judge in the present case did accept a no contest plea. He then filed a final judgment entry on March 29, 2001, finding the defendant guilty. Therefore, although the trial court failed to correctly follow the requirements of Crim. R.19, the appeal is properly before us.
A few additional points are pertinent in this regard, since other procedural problems occurred in the trial court. First of all, the file does not contain an order of reference to the magistrate. Under both Traf. R. 14(C) and Crim. R. 19(C), trial courts are allowed to refer certain cases to magistrates for adjudication and decision. According to Crim. R. 19(C)(2), trial courts may make a specific order of reference in a particular case or may refer categories of motions and cases to a magistrate.
Based on Crim. R. 19(C)(2), the trial court could have filed an order referring all suppression motions to a magistrate. However, as we said, the record does not contain any evidence of that fact. A copy of any referral order should be included in each file, whether the referral is of a particular case, or is of a general category of cases. This will allow reviewing courts to know what limitations or instructions, if any, have been given to the magistrate. See Crim. R. 19(C)(3) (indicating that trial courts may limit or specify the magistrate's powers in the referral order).
We do note that the Vandalia Municipal Court adopted local rules allowing referees (now magistrates) to hear and report "minor traffic proceedings with the written waiver of the right to trial by a Judge," and "[s]uch other matters as may properly be referred by a Judge." Vandalia M.C. 61.00(A)(4) and (7) (Emphasis added). This local rule further says that if no objections are filed, the judge "shall review the findings of fact and issue the appropriate order in said case." Id. at 61.00(C). The latest version of these local rules we found using electronic research and the local law library was the 1993 version, which was written before the amendments to Crim. R. 19. Since magistrates were not allowed to hear suppression motions at the time the Vandalia local rules were written, we cannot construe the existing local rule as a blanket reference of the category of suppression motions.
However, even if a blanket order of reference had been filed, or if the local rule could be construed as such, further procedural defects exist. As we mentioned earlier, the defendant in this case was charged with DUI and driving left of center (violations of R.C. 4511.19(A) and R.C. 4511.25, respectively). The penalty for DUI includes imprisonment. See R.C.4511.19(A). However, Crim. R. 19(C)(1)(f)(ii) provides that if a charged offense is one for which imprisonment is a possible penalty, a magistrate may hear motions in such matters only "[u]pon the unanimous consent ofthe parties in writing or on the record in open court." Emphasis added.
Traf. R. 14(C) contains a similar requirement, by stating that a defendant must consent, in writing, to referral of contested cases. And, as we said, Vandalia's own local rule requires written waiver of the right to trial by a judge. Despite these facts, the record in the present case does not show unanimous consent to reference, either in writing or on the record in open court. In fact, the record does not contain even unilateral consent by Defendant.
Since Defendant did not raise these issues at trial or on appeal, we cannot consider them as a basis for reversing the judgment. See, e.g.,State v. Garrison (1997), 123 Ohio App.3d 11, 15, and Vinci v. Ceraolo
(1992), 79 Ohio App.3d 640, 644. Despite this fact, we have commented briefly on the procedural problems so that the trial court can avoid committing reversible error in future cases.
 II
Turning now to the merits of the appeal, the first assignment of error challenges the grounds for the initial traffic stop. Under well-established law, the propriety of an investigative stop "must be viewed in light of the totality of the surrounding circumstances." Statev. Bobo (1988), 37 Ohio St.3d 177, paragraph one of the syllabus. A police officer must be able to point to "specific and articulable facts, which taken together with rational inferences from those facts, reasonably warrant" an intrusion. Id. at 178-79.
When we review the trial court's ruling on suppression matters, we do not evaluate credibility. Instead, we decide if the trial court properly applied the law. State v. Woods (1996), 113 Ohio App.3d 240, 244. In the present case, the testimony at the suppression hearing came solely from the arresting officer. As a result, credibility was not really an issue, even for the trial court.
The arresting officer, Trooper Albers, gave the following account of the events leading to Defendant's arrest. On the night in question, Albers worked the 11 p.m. to 7 a.m. shift. Snow had fallen during the evening, but the roads were wet, not snow-covered. Instead, the snow was off the side of the road. While Albers was patrolling on North Dixie Drive, he saw Defendant's car traveling northbound on the same road. Albers was behind Defendant's car and saw it travel left of center by about a foot. The car then traveled left of center two more times and drifted off the right side of the road three times. Albers finally stopped the car because the driving was unreasonable for the weather conditions. Subsequently, after administering field sobriety tests, Albers cited Defendant for DUI and driving left of center. The time of the offense, as listed on the citation, was 3:26 a.m., Defendant claims the suppression motion should have been granted because the State failed to prove that his actions in crossing the marked centerline were dangerous. In this regard, Defendant relies on various Ohio cases which hold that crossing a marked traffic line does not necessarily justify a stop.
As a general proposition, we have no quarrel with this statement of law. We agree that momentary lapses in control usually do not furnish reasonable, articulable suspicion of illegal driving. See, e.g., Statev. Elder (July 25, 1996), Ross App. No. 95CA2165, unreported, 1996 WL 422469, p. 3. However, as the cases reveal, the propriety of a stop depends heavily on the particular facts involved. For example, one case that Defendant relies on is State v. Brite (1997), 120 Ohio App.3d 517. In Brite, an officer saw the defendant's car drive over the right hand edge lines of the road twice in the span of a mile. On the other hand, the defendant was never observed going left of center or violating any other traffic laws. Id. at 518. Under the circumstances, the Fourth District Court of Appeals held that the officer did not have a reasonable basis for believing that the defendant was engaging in criminal activity. Id. at 520.
In contrast, the same District Court of Appeals found in Elder that a reasonable suspicion existed where the defendant drifted over the right edge line once and went left of center three times. As the Elder court observed:
 repeated instances of improper control over a short distance may give rise to such a [reasonable] suspicion [of illegal activity]. Appellant's driving is more accurately characterized as a series of events rather than as a slight isolated lapse.
1996 WL 422469, p. 3 (parenthetical material added). Compare State v.Vest (May 29, 2001), Ross App. No. 00CA2576, unreported, 2001 WL 605217 (crossing the right edge line twice and the centerline by more than a tire width is not just a de minimus failure to stay within the marked lane).
Our own district has found erratic driving alone sufficient cause for an investigatory stop, i.e., a stop may be justified "where an officer observes a vehicle weaving in its own lane of travel for several blocks, in the early morning hours, in an area where a high number of DUI arrests had recently been made." State v. Hiler (1994), 96 Ohio App.3d 271, 274, citing State v. Hilleary (May 24, 1989), Miami App. No. 88-CA-5, unreported, 1989 WL 55637.
Like Elder and Vest, the present case does not involve a single, isolated lapse of control. Instead, Trooper Albers saw repeated instances of erratic driving in the very early morning, during which time the car went over the centerline by a foot. Under the circumstances, we think the officer was justified in making an investigatory stop. Accordingly, the first assignment of error is without merit and is overruled.
 III
The second assignment of error is based on Trooper Albers's alleged lack of probable cause to believe that Defendant was driving under the influence. In this regard, the testimony at the hearing revealed that when Albers made contact, he noticed a strong odor of alcohol on Defendant's breath. Albers also noticed that Defendant's eyes were red and glassy, and that his speech was slurred. Additionally, Defendant said he had been drinking earlier in the evening. After asking Defendant to step out of the car, Albers administered field sobriety tests [horizontal gaze nystagmus (HGN) and one-leg stand], which Defendant failed.
The magistrate rejected the results of the HGN test, due to Albers' failure to comply with State v. Homan (2000), 89 Ohio St.3d 421 . The magistrate did not specifically discuss the validity of the one-leg stand test. However, she did find probable cause for the arrest, based on the totality of the facts.
To decide if the police have probable cause for a DUI arrest, courts consider "whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence." 89 Ohio St.3d at 427. In making this determination, the court examines "the `totality' of facts and circumstances surrounding the arrest." Id.
As an initial point, we agree with the magistrate that the HGN test results should have been excluded. Furthermore, even if we also exclude the results of the one-leg stand test, we still find that Trooper Albers had probable cause to arrest Defendant for DUI. Notably, the underlying circumstances of this case are indistinguishable from those found to establish probable cause in Homan (erratic driving, red and glassy eyes, smell of alcohol on breath, and admission of prior drinking). Id.
Consequently, since probable cause existed for Defendant's arrest, the second assignment of error is also without merit.
Based on the preceding discussion, both assignments of error are overruled, and the judgment of the trial court is affirmed. The State's motion to dismiss the appeal is also overruled.
WOLFF, P.J., and FAIN, J., concur.