DECISION AND JUDGMENT ENTRY
This is an appeal from a Chillicothe Municipal Court judgment of conviction and sentence. The trial court found Delbert O. Vest, defendant below and appellee herein, guilty of operating a motor vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(3).
Appellant assigns the following error for review:
 "THE TRIAL COURT ERRED IN OVERRULING APPELLANT'S MOTION TO SUPPRESS."
Our review of the record reveals the following pertinent facts. On August 6, 2000, at approximately 1:54 a.m., Ohio State Highway Patrol Trooper Timothy Karwatske drove his patrol cruiser on State Route 23, a four-lane divided highway with two lanes of opposite travel. Trooper Karwatske then observed a vehicle traveling in front of him.
Trooper Karwatske testified that when he first saw the vehicle, his cruiser was in the left lane and the other vehicle was in the right lane. He stated that he observed the vehicle cross over the line which divided the two lanes of travel. Trooper Karwatske stated that the vehicle crossed the dividing line by approximately six inches to one foot. The trooper further observed the vehicle cross the dividing line by six inches to one foot two additional times before he decided to stop the vehicle.
Upon stopping appellant, Trooper Karwatske discovered that appellant had been operating his vehicle while under the influence of alcohol.[1]
The officer subsequently charged appellant with: (1) operating a motor vehicle while under the influence of alcohol, in violation of R.C.4511.19(A)(3); (2) operating a motor vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1); and (3) driving outside the marked lanes, in violation of R.C. 4511.33.
On August 22, 2000, appellant filed a motion to suppress evidence. Appellant argued, inter alia, that Trooper Karwatske lacked a reasonable suspicion of criminal activity to justify the traffic stop. Specifically, appellant contended that the trooper lacked a reasonable suspicion that appellant had committed any traffic violation.
On October 25, 2000, the trial court held a hearing to consider appellant's motion to suppress evidence. At the hearing appellant testified that the trooper, by quickly pulling up behind appellant's vehicle, caused appellant to "flinch" and to swerve the vehicle. The trial court, however, rejected appellant's assertion that the trooper caused appellant to drive outside the marked lane. The court noted that Trooper Karwatske stated that when he first observed appellant's vehicle drive outside the marked lane, the trooper was in the left lane and appellant was in the right lane. Thus, the court found specious appellant's testimony that the trooper pulling directly behind appellant caused appellant to swerve.
The court further found that appellant's vehicle crossed the dividing line between the two lanes of travel by six inches to one foot three times within a quarter of a mile. The court concluded that appellant's driving outside the marked lanes provided Trooper Karwatske with a reasonable suspicion to justify a traffic stop.
Following the trial court's denial of appellant's motion to suppress evidence, appellant withdrew his plea of not guilty and entered a no contest plea to violating R.C. 4511.19(A)(3). The state dismissed the remaining two charges. The trial court sentenced appellant to forty-five days in jail. Appellant filed a timely notice of appeal.
In his sole assignment of error, appellant contends that the trial court erred by overruling his motion to suppress. Appellant argues that the trial court should have suppressed the evidence obtained as a result of the traffic stop because the traffic stop violated hisFourth Amendment right to be free from unreasonable seizures. In particular, appellant argues that Trooper Karwatske failed to articulate specific facts to demonstrate that he possessed a reasonable suspicion of criminal activity to justify the stop of appellant's vehicle. Appellant asserts that Trooper Karwatske did not observe appellant commit any traffic violations or any erratic driving that would justify a traffic stop.
The state asserts that the trial court correctly determined that appellant's conduct in driving his vehicle outside the marked lane by six inches to one foot three times within a quarter to one-half mile provided the trooper with a reasonable, articulable suspicion of criminal activity to justify a stop of appellant's vehicle. We agree with the state.
We initially note that appellate review of a trial court's decision regarding a motion to suppress evidence involves mixed questions of law and fact. See State v. Long (1998), 127 Ohio App.3d 328, 332, 713 N.E.2d 1,3. When ruling on a motion to suppress evidence, the trial court assumes the role of trier of fact and is in the best position to resolve questions of fact and to evaluate the credibility of witnesses. See Statev. Fanning (1982), 1 Ohio St.3d 19, 20, 437 N.E.2d 583, 584; State v.Dunlap (1995), 73 Ohio St.3d 308, 314, 652 N.E.2d 988, 995. Accordingly, a reviewing court must defer to the trial court's findings of fact if competent, credible evidence exists to support the trial court's findings. See Long, supra; State v. Medcalf (1996), 111 Ohio App.3d 142,675 N.E.2d 1268; Dunlap, supra. The reviewing court then must independently determine, without deference to the trial court, whether the trial court properly applied the substantive law to the facts of the case. See Long; State v. Williams (1993), 86 Ohio App.3d 37,619 N.E.2d 1141; State v. Fields (Nov. 29, 1999), Hocking App. No. 99 CA 11, unreported. See, generally, Ornelas v. United States (1996),517 U.S. 690, 116 S.Ct. 1657, 134 L.Ed.2d 911.
The Fourth and Fourteenth Amendments to the United States Constitution,[2] as well as Section 14, Article I of the Ohio Constitution,[3] protect individuals against unreasonable governmental searches and seizures. See, e.g., Delaware v. Prouse (1979), 440 U.S. 648,662, 99 S.Ct. 1391, 1400, 59 L.Ed.2d 660; State v. Gullett (1992),78 Ohio App.3d 138, 143, 604 N.E.2d 176, 179. In Katz v. United States, the Supreme Court held that "searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se
unreasonable under the Fourth Amendment — subject only to a few specifically established and well- delineated exceptions." Id., (1967),389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576; see, also, State v.Sneed (1992), 63 Ohio St.3d 3, 6-7, 584 N.E.2d 1160, 1165; State v.Braxton (1995), 102 Ohio App.3d 28, 36, 656 N.E.2d 970, 975.
One exception to the general prohibition against warrantless seizures exists when an officer possesses probable cause to believe that an individual has committed a traffic violation. See Whren v. United States
(1996), 517 U.S. 806, 809, 116 S.Ct. 1769, 135 L.Ed.2d 89. In Whren, the Supreme Court recognized that the Fourth Amendment's reasonable requirement is fulfilled and a law enforcement officer may constitutionally stop the driver of a vehicle when the officer possesses probable cause to believe that the driver of the vehicle has committed a traffic violation. Id. The court stated that "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." Id., 517 U.S. at 809-10,116 S.Ct. 1769, 135 L.Ed.2d 89; see, also Dayton v. Erickson (1996),76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091, 1097-1098.
In the absence of probable cause to believe that the driver of a vehicle has committed a traffic violation, a law enforcement officer generally may not stop the vehicle unless the officer observes facts giving rise to a reasonable suspicion of criminal activity. See, generally, Terry v. Ohio (1968), 392 U.S. 1, 88 S.Ct. 1868,20 L.Ed.2d 889; State v. Andrews (1991), 57 Ohio St.3d 86, 565 N.E.2d 1271; Statev. Venham (1994), 96 Ohio App.3d 649, 654, 645 N.E.2d 831, 833. To justify a traffic stop based upon less than probable cause, the officer must be able to articulate specific facts which would warrant a person of reasonable caution in the belief that the person stopped has committed or is committing a crime, including a minor traffic violation.[4] SeeErickson, 76 Ohio St.3d 3, 11-12, 665 N.E.2d 1091, 1097-1098; Prouse,supra; Terry, supra.
Based upon the foregoing well-established principles of law, we agree with the trial court's conclusion that Trooper Karwatske's initial stop of appellant complied with the Fourth Amendment. Trooper Karwatske stated that he observed appellant drive outside the marked lane of travel three times within a short distance (one-quarter to one-half mile) and that appellant's vehicle crossed the dividing line by six inches to one foot. Appellant's driving provided the officer with probable cause to believe that appellant violated R.C. 4511.33(A).[5] Because the trooper possessed probable cause to believe that appellant had committed a traffic violation, the trooper's conduct in stopping appellant did not violate appellant's constitutional right to be free from unreasonable seizures. See Whren; Erickson; see, also, State v. Bolding (May 28, 1999), Erie App. No. E-97-115, unreported (concluding that driving outside the marked lane by one-half of a foot sufficient to justify traffic stop); State v.Myers (Jan. 7, 1998), Summit App. No. 18292, unreported (stating that driving outside the marked lane by approximately one foot within a short distance sufficient to justify traffic stop).
Relying on State v. Brite (1997), 120 Ohio App.3d 517, 698 N.E.2d 478, appellant argues that the state failed to establish sufficient facts to illustrate that the officer possessed either probable cause or a reasonable suspicion that appellant had committed a traffic violation. Appellant claims:
 "The State did not adduce any evidence showing how long each crossing occurred, or that [a]ppellant had engaged in any other possible violations of traffic or equipment laws. The officer simply testified that while on patrol, he came up behind Appellant and observed the lane violations. The unrefuted evidence from Appellant, however, is that he was driving in his lane of travel when the bright lights of the trooper's rapidly approaching cruiser startled him and caused him to flinch as he was preparing to cross over to the left hand lane in order to turn off the highway."
Appellant asserts that his "brief jerking of the steering wheel * * * [was] not unreasonable or indicative of criminal activity." We disagree with appellant.
First, the trial court found, and the record reflects, that Trooper Karwatske observed appellant drive outside the marked lane before the trooper pulled his vehicle directly behind appellant. Thus, the trial court correctly found specious appellant's claim that the trooper caused appellant to swerve.
Second, the record does not support appellant's claim that he "briefly jerked" the wheel. Rather, the record reveals that appellant "jerked" the wheel three times within a short distance and caused his vehicle to travel over the dividing line by at least six inches. We do not believe that such actions show a "brief jerking" of the wheel.
Third, we do not agree with appellant that the state failed to present sufficient evidence to demonstrate that appellant violated the traffic laws and, thus, that Brite applies. In State v. Fields (Nov. 29, 1999), Hocking App. No. 99 CA 11, unreported, the defendant similarly argued that the state failed to present sufficient evidence to prove that he violated the traffic laws. We rejected the appellant's claim and distinguished Brite as follows:
 "* * * * In Brite, an Ohio State Highway Patrol trooper initiated a traffic stop after observing the defendant's car `weaving within its lane of travel.' Id. at 519. The officer's sole justification for the stop was his observation that the defendant crossed the right edge line twice within the span of one mile. Id. During the traffic stop, the defendant failed a series of field sobriety tests and was arrested for DUI. After the trial court denied his motion to suppress, the defendant was ultimately convicted. This court reversed the conviction, holding that the trooper's testimony did not support a reasonable suspicion that the defendant was driving drunk at the time of the stop. Id. at 521. We were unpersuaded by the officer's sketchy testimony that the defendant crossed the right edge line:
 `The officer testified below that his sole reason for making the investigatory stop was that he had observed appellant's car drive over the right-hand edge line of the road on two occasions during the span of a mile. It was unclear, however, just how far over the edge line appellant's car had gone. Moreover, [the trooper] testified that appellant never went left of center, was not speeding, and violated no other traffic laws. We find as a matter of law that these two instances of crossing the right-hand edge line of the road, without more, were insufficient to justify a stop of the vehicle.'
Id. (footnote omitted).
The appellant in this case argues that Trooper Wells' observations were virtually indistinguishable from the situation we encountered in Brite. Thus, the appellant argues that we must reverse the conviction, as we did in Brite. We are not persuaded.
Our holding in Brite reflected this court's belief that isolated instances of weaving and/or marked lane violations that are not described with particularity do not provide a factual basis for finding reasonable suspicion for drunk driving. See, also, State v. Williams, supra,86 Ohio App.3d at 42-43; State v. Gullett (1992), 78 Ohio App.3d 138, 145,604 N.E.2d 176. This case is readily distinguishable because the detailed testimony from the suppression hearing reflected more than simply a deminimis failure of the appellant to stay within his marked lane. Trooper Wells observed the appellant cross the right edge line twice and a double yellow line on the left edge. On each occasion, the appellant crossed the line by more than a tire width and `jerked' the car abruptly when moving back into the appropriate lane. Moreover, the appellant's repeated failures to stay within his marked lane occurred over an approximate distance of only two hundred fifty feet. Based on these detailed observations occurring over a relatively short distance, Trooper Wells reasonably suspected that the appellant was unable to control his vehicle properly. See, e.g., State v. Lloyd, supra, 126 Ohio App.3d at 103
(crossing yellow line three times and white berm line once over short distance created reasonable suspicion for traffic stop); State v. Lane
(Mar. 11, 1998), Athens App. No. 97CA47, unreported (reasonable suspicion for traffic stop existed when defendant crossed center line three times within two miles and displayed erratic and jerky driving); State v.Elder (July 25, 1996), Ross App. No. 95CA2165, unreported (crossing right edge line once and center line three times within one mile justified traffic stop); State v. Muncie (Jan. 15, 1994), Ross App. No. 93CA1947, unreported (traffic stop justified when driver crossed center line and edge line once each and made contact with center line four other times within span of one mile); State v. Farris (Aug. 5, 1993), Lawrence App. No. 93CA15, unreported (crossing edge line three times within a quarter mile provided reasonable suspicion for stop); State v. Lynn (Dec. 4, 1992), Hocking App. No. 92CA8, unreported (weaving within lane several times within three blocks justified investigatory stop). Although the appellant was driving steadily uphill on a curvy road, there was no evidence in the record indicating any adverse road conditions that would have prevented a driver from staying within his lane of travel. Based on this record, we find that Trooper Wells had reasonable articulable suspicion to initiate an investigatory traffic stop."
Similarly, in the case at bar, the record reflects more than "deminimis" driving irregularities. Like Fields, the suppression hearing testimony reveals appellant's repeated failure to stay in his marked lane: (1) the distance appellant traveled outside his lane of travel (six inches to one foot); (2) the number of times appellant drove over the line (three); and (3) the distance appellant traveled while driving outside the marked lane (one-quarter to one-half mile). Thus, we do not believe that the case sub judice falls within the parameters of Brite. Again, in Brite the record failed to indicate the distance the defendant's vehicle traveled across the line.
Moreover, we note that Brite discussed whether crossing the right-hand edgeline could give rise to a reasonable suspicion that the driver was driving under the influence, not whether such conduct could provide probable cause or a reasonable suspicion that the driver had committed a traffic violation. In the case at bar, the officer stopped appellant for a traffic offense — driving outside the marked lane of travel — not upon a reasonable suspicion that appellant was driving while under the influence of alcohol. Once the officer observed appellant commit the traffic violation, a traffic stop was justified. See, e.g.,Whren, supra.
Accordingly, based upon the foregoing reasons, we overrule appellants' sole assignment of error and affirm the trial court's judgment.
JUDGMENT ENTRY
It is ordered that the judgment be affirmed and that appellee recover of appellants costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Chillicothe Municipal Court to carry this judgment into execution.
If a stay of execution of sentence and release upon bail has been previously granted, it is continued for a period of sixty days upon the bail previously posted. The purpose of said stay is to allow appellant to file with the Ohio Supreme Court an application for a stay during the pendency of the proceedings in that court. The stay as herein continued will terminate at the expiration of the sixty day period.
The stay will also terminate if appellant fails to file a notice of appeal with the Ohio Supreme Court in the forty-five day period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Ohio Supreme Court. Additionally, if the Ohio Supreme Court dismisses the appeal prior to the expiration of said sixty days, the stay will terminate as of the date of such dismissal.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
 _______________________________ Peter B. Abele, Presiding Judge
Kline, J. Evans, J.: Concur in Judgment Opinion.
[1] The trooper administered a breath analysis, which revealed a blood alcohol level of .185.
[2] The Fourth Amendment to the United States Constitution provides:
 The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.
[3] Section 14, Article I of the Ohio Constitution provides:
 The right of the people to be secure in their persons, houses, papers, and possessions, against unreasonable searches and seizures shall not be violated, and no warrant shall issue, but upon probable cause, supported by oath or affirmation, particularly describing the place to be searched, and the person and things to be seized.
[4] We recognize that the traffic stop cases are not entirely consistent in the application of the probable cause or the reasonable suspicion standard. Some courts, citing Whren, hold that a traffic stop is constitutionally permissible when an officer possesses probable cause that the driver of the vehicle has committed a traffic violation. See,e.g., State v. Bolding (May 28, 1999), Erie App. No. E-97-115, unreported; State v. Barr (Mar. 21, 1997). Other courts have held that the standard by which to judge the constitutionality of a traffic stop is not probable cause, but rather is reasonable suspicion of criminal activity. See, e.g., State v. Lloyd (1998), 126 Ohio App.3d 95,709 N.E.2d 913; State v. Fields (Nov. 29, 1999), Hocking App. No. 99 CA 11, unreported; State v. Carter (June 14, 2000), Belmont App. No. 99 BA 7, unreported.
[5] R.C. 4511.33 sets forth the rules for driving in marked lanes. The statute provides:
 Whenever any roadway has been divided into two or more clearly marked lanes for traffic * * * the following rules apply:
 (A) A vehicle * * * shall be driven, as nearly as is practicable, entirely within a single lane or line of traffic and shall not be moved from such lane or until the driver has first ascertained that such movement can be made with safety.